HERETH and Another *v.* THE MERCHANTS' NATIONAL BANK OF INDIANAPOLIS.

PROMISSORY NOTE.—*Payable in Bank.*—*Indorsee.*—In a suit on a promissory note made payable to order or bearer in a bank in this State, brought by an indorsee against the maker, the fact that the note was procured by fraud does not constitute a good defense; if the plaintiff purchased the note for a valuable consideration, in the usual course of business, before it was due, and without notice of the fraud.

SAME.—*Patent Right.*—The words, "this note is given for patent right," written on the margin of such a note will not authorize the jury in such action on said note to infer that any indorsee thereof had knowledge or notice that the patent for which the note was given was of no value, or that the note was procured by fraud.

SAME.—*Purchaser with Notice.*—Where such a note has been procured of the maker by the fraud of the payee, by whom it has been indorsed to a third person, another person who has purchased the note of such indorsee with actual knowledge that it was so procured, or with notice of any facts indicating to a reasonably prudent man that it was so procured, cannot recover in a suit on the note against the maker, unless said third person of whom he purchased it was an innocent holder for value.

SAME.—*Purchaser from Innocent Holder.*—A person to whom a promissory note governed by the law merchant has been transferred or indorsed, for a valuable consideration, before it was due, by an innocent holder thereof for value, may recover on it against the maker, though he knew at the time he purchased it that it had been procured of the maker by the fraud of the payee.

SAME.—*Holder in Good Faith.*—One who purchases a promissory note negotiable by the law merchant, for a valuable consideration, before maturity, without notice of any equities existing between the original parties to the note, or of any fraud having been used to procure the execution of the note, is to be deemed a holder in good faith.

SAME.—*Notice.—Inadequacy of Price.*—Whether inadequacy of the price asked for a note offered for sale is a circumstance indicating to the purchaser that it was procured by fraud, is a question for the jury.

APPEAL from the Marion Common Pleas.

Downey, J.—This was an action predicated upon a promissory note, payable at a bank in this State, and having in the margin thereof the words, "This given for patent right." It was payable to one Hartwell, by him indorsed to Noble, and by him to the appellee. It was executed at the same time, and for the same consideration, as the note in the case decided at this term in which Hereth and another were appellants and Meyer was appellee, 33 Ind. 511. The defense set up was the same as the defense in that case. The jury found for the plaintiff, and in answer to interrogatories, found that neither Noble nor the appellee had any notice of any defense to the note, at or before the time when they purchased the note.

The case is before us on the alleged error of the common pleas in refusing a new trial. The evidence is set out in the bill of exceptions, and also certain charges which the court refused to give, and others which were given, to which the appellants excepted.

There is a preliminary question. In the record there are

copied the interrogatories and answers of the defendants thereto, and two affidavits for continuance, which are not made part of the record in any proper way; also the first and fourth paragraphs of the defendant's answer, which the record shows were withdrawn. A motion is made to strike out these parts of the record.

We think the motion ought to be sustained. An intelligent clerk can have no reasonable excuse for thus encumbering and swelling the record.

The first assigned error, arising out of the overruling of the motion for a new trial, is the giving of instructions 10, 11, 12, 13, and 15, by the court to the jury. They are as follows:

"10th. The note, being made payable in a bank, in this State, is by our laws commercial or negotiable paper, and the defendants who put such paper in circulation cannot set up as a defense against the plaintiff that the note was procured by fraud, if the plaintiff purchased the note for a valuable consideration, in the usual course of business before it was due, and without notice of the fraud."

"11th. On the margin of the note in suit are written the words, 'This note is given for patent right.' These words alone will not authorize you to infer that the plaintiff or her agents, or the defendant. Noble, had knowledge or notice that the patent for which the note was given was of no value, or that the note was procured by fraud."

"12th. When the note was offered for sale to the plaintiff, she or her agents were not bound, from seeing the words 'This is given for patent right' written on the margin of the note, to make any inquiry of the makers or others as to the patent right, to ascertain its value or whether any fraud had been used in procuring its sale; for patent rights are legitimate subjects of sale; but if the plaintiff or her agents had actual knowledge, or notice of facts or circumstances from any source, indicating that the note was procured by fraudulent means, then the plaintiff would not be an innocent purchaser; and if there was fraud practiced by the payee of

the note, by means of which it was procured to be made, the plaintiff cannot recover against the makers of the note, unless you find that the defendant Noble, of whom the plaintiff purchased the note, had no knowledge or notice of fraud; the rule of law being that an innocent purchaser, one who acquired the paper in good faith, may transfer it before it is due for a valuable consideration, even to one who has notice of the note having been procured by fraud, and the person to whom it is so transferred or endorsed will be entitled to recover against the makers."

" 13th.   The purchasers of negotiable paper, for a valuable consideration, before maturity, without notice of any equities existing between the original parties, or of any fraud having been used to procure the execution of the note, or which is the same thing, actual knowledge or notice of facts and circumstances indicating to the mind of a reasonably prudent man that the note was procured by fraudulent means, are to be deemed as holders in good faith."

" 15th.   If either Noble or the plaintiff or both of them received the note in question by endorsement, in the usual course of business, before it was due, for a valuable consideration, without any knoweldge that it was subject to any defense, the jury must find for the plaintiff against the defendants Langsdale and Hereth, the makers of the note."

The tenth instruction seems to us to contain a correct statement of the law.   It is expressly provided by statute, that promissory notes made payable to order or bearer, in a bank, in this State, shall be negotiable as inland bills of exchange.   1 G. & H. 450, sec. 6.   The law with reference to such paper is certainly as laid down by the court in this charge.

With reference to the eleventh charge, and that part of the twelfth which speaks of the effect of the words of the memorandum on the margin of the note, as evidence, we think the charges were correct.   We have already so decided in the case to which we have already referred, between these same appellants and another party.   As to the other branch of

the twelfth charge, it is well settled that if the plaintiffs were purchasers of the note for value, before its maturity, and without notice of any infirmity in the paper, it could make no difference whether Noble was or was not an innocent holder. In Chitty on Bills, 79, it is said, "In general, the circumstance of a bill or note having been obtained without adequate consideration, or even by duress or fraud, or misapplied by an agent to his own use, affords no defense where the instrument comes into the possession of a *bona fide* holder for value, without notice, and before it is due. It is but just, that if one of two innocent persons must sustain a loss, he who has suffered a negotiable security with his name attached to it to get into circulation ought to bear the loss, and seek his remedy against the person who improperly passed the instrument."

Again, it is well settled, that the purchaser of commercial paper from one who is an innocent holder for value, may recover on it, notwithstanding he knew that there were defenses against the note, at the time he took it. *Hascall* v. *Whitmore*, 19 Me. 102; *Smith* v. *Hiscock*, 14 Me. 449.

The thirteenth charge was in accordance with the well established rule of law, and gave the jury a correct statement as to the persons who are to be regarded as holders of paper in good faith.

The next point made is that the court erred in refusing to instruct the jury as asked by the appellants.

The bill of exceptions contains this statement on this subject: "And be it further remembered that after the evidence had been concluded and before the argument of the cause had commenced, the defendants Langsdale and Hereth, by their counsel, requested the court to give the following instructions to the jury, to wit." Then follow the instructions which were asked.

If it was asked that these charges should be given before the argument of the cause, as would seem to be inferable from the words, then they were correctly refused by the court for that reason. But as this point is not made by the

appellee we will examine the charges which were asked and refused.    They are as follows:

"1.    If the jury find from the evidence that the note sued upon was obtained by fraud, and that the same was assigned to the plaintiff with a knowledge of the fraud, or of such facts as would put a prudent man upon inquiry, they must find for the defendant."

"2.    Where there are marks of an unusual character upon a negotiable note, a party who proposes to become the purchaser of such a note must, at his peril, make himself acquainted with their full meaning, and if by inquiry it would lead to the discovery of the fact that the instrument was void on account of fraud or otherwise, then the purchaser will be held not to be a *bona fide* holder of such note."

"3.    If the note in question was purchased by the plaintiff at a higher rate of discount than was customary with the plaintiff in discounting commercial paper, and the makers of the note were believed by the plaintiff, when she purchased the note, to be responsible and prompt, the jury are entitled to consider this a circumstance tending to show that the plaintiff when she purchased the note was put upon inquiry and believed that the note was affected with some infirmity."

"4.    Where a note has been procured by the payee by fraud, if the purchaser of it buys it under such circumstances as would put a prudent person upon inquiry, then he has no better right to recover upon the note than the payee would have had."

"5.    If the jury believe from the evidence that the plaintiff's agents Malott and Noble bought the note under such circumstances as to put them upon inquiry and charge them with notice of the infirmity of the note, and if they believe that the note was procured from Langsdale and Hereth by fraud, it is competent for the jury to find in favor of defendants Langsdale and Hereth, and against the defendant Noble."

The first of these charges was too indefinite to go to the

jury, and is liable to the objection that it ignores the legal proposition which we have already laid down, that, though the plaintiff knew of the fraud, yet if the plaintiff's indorser did not, and was an innocent holder, &c., the right of the plaintiff to recover would not be affected.

The "marks of an unusual character," alluded to in the second charge, are no other, we presume, than the words written on the magin of the note, expressing what was the consideration of it. We have already said that these of themselves were not sufficient to put a party on inquiry.

The circumstance referred to in the third charge, and its force and effect were left to the jury by the court for whatever they were worth, if there was evidence from which the jury could find or infer their existence. The court told the jury, in the twelfth charge, that " if the plaintiff or her agents had actual knowledge or notice of facts or circumstances from any source, indicating that the note was procured by fraudulent means, then the plaintiff would not be an innocent purchaser," &c. Inadequacy of price, if there was any, could be no more than a circumstance, which the jury might consider, and under the part of the charges just quoted, they were at liberty to give it what weight they thought it deserved. The court was not bound to repeat the same instruction in substance.

The fourth charge overlooks the rule before referred to, that a purchaser may know of faults in the note, and still be protected by the innocence of the party from whom he obtained it, and should not, for that reason, have been given. If Noble was a *bona fide* holder, the plaintiff might have been aware of all the facts concerning the fraud and still be entilted to recover.

There is no pretense of any evidence in the case tending to show that Malott and Noble were the agents of the plaintiff, as assumed in the fifth charge. But if there was such evidence, then charge number seventeen, as given by the court, covered the ground fully which was taken in the rejected fifth charge. The court said to the jury in that charge,

"If you believe from the evidence that the plaintiff's agent Malott and Noble bought the note with a knowledge of such circumstances and facts as to charge them with knowledge or notice of any infirmity in the note; and if you believe that the note was procured from Langsdale and Hereth by fraud, it is competent for you to find in favor of the defendants Langsdale and Hereth, and against the defendant Noble."

It is proper to say that among the charges given by the court to the jury, not excepted to, is the following:

"14. Where there are marks of an unusual character upon a note which might not, of themselves, be sufficient to affect the purchaser with notice of any infirmity in the instrument, yet slighter circumstances in such cases will be regarded as having put the purchaser upon inquiry, or as having affected him with notice of such infirmity, than where no such marks were upon the instrument."

We are satisfied that no error was committed by the court with reference to the charges given, or those refused.

The third position assumed is, that the court erred in admitting improper evidence; and the fourth ground relates to the exclusion of competent, material, and relevant testimony offered by the defendants.

We find nothing in the record to sustain these assignments, and nothing is said on the subject in the appellants' brief. Neither the motion for a new trial, nor the assignment of errors, nor yet the brief of the appellants, in any way points out or specifies any such irregularity.

The last assignment of error is that the court should have granted a new trial, on the application of the defendants, on the ground that the verdict of the jury is not sustained by sufficient evidence.

We do not see how the jury could have found otherwise than as they did upon the question whether the plaintiff was or was not a *bona fide* holder of the note. The note was sold and indorsed by Hartwell, the payee, to Noble, and by him to the plaintiff, almost immediately after it was executed,

and at a time when the defendants themselves had not yet discovered the fraud and the worthlessness of the patented article of which they now complain.

The judgment is affirmed, with two per cent. damages and costs.

*A. G. Porter, B. Harrison, W. P. Fishback, P. W. Bartholomew, J. E. McDonald, A. L. Roache, E. M. McDonald,* and *J. M. Butler,* for appellants.

*L. Barbour, C. P. Jacobs,* and *T. H. Bowles,* for appellee.