## S. R. BUCHANAN v. T. L. WREN.

### No. 1249.

1. **Rent—Sale of the Land.**—As between the vendor and vendee, rents maturing after the sale go to the vendee.

2. **Obligation Payable on or Before a Given Date.**—An obligation promising to pay "on or before" a given date is due at the time fixed, and not before. The rights of the holder are clear and certain. Such obligation, payable to the payee or order, is negotiable.

3. **Negotiable Paper—Consideration.**—A promissory note to be negotiable must contain an absolute and unconditional promise to pay, but it is not essential to its negotiability that it be placed upon a consideration received at or before the execution of the note; e. g., a note otherwise negotiable is not affected by the fact that it appeared on its face to be given for rent for a time extending into the future.

4. **Same—Same.**—An instrument negotiable in form imports a consideration; and the mere fact of such instrument stating or referring to the consideration can not affect its validity or negotiability, unless such statement discloses fraud or an illegal contract.

5. **Rent for Ensuing Term.**—A negotiable note on its face, given for rent for an unexpired term, if in hands of a bona fide purchaser, can be enforced, although the title of the land may have passed from the payee before the maturity of such note.

6. **Bona Fide Holder—Endorsee.**—The endorsee of a negotiable note is presumed to have paid a valuable consideration for it, and the burden of proof is upon one attacking the transfer to show that he had not. Bona fides is the rule; mala fides must be proven.

7. **Agreement as to Facts on File.**—In absence of a statement of facts, a finding of a fact by the trial court will not be set aside because in conflict with an agreement by the parties appearing in the record.

APPEAL from Travis. Tried below before Hon. J. H. ROBERTSON. A full statement is given in the opinion.

*W. M. Brown,* for appellant.—1. Upon the sale of the Reaville place under the foreclosure proceedings and its purchase by J. Alleine Brown, on August 1, 1893, the rents for the year 1893 became payable to him, and he had the right to collect same.

2. The instrument sued on is not negotiable, because it provides for payments "on or before" a given date. Stutts v. Silva, 119 Mass., 139; Way v. Smith, 111 Mass., 523; Hubbard v. Mosely, 11 Gray, 170; Frolich v. Norton, 2 Mich., 130; Choulton v. Allen, 70 Mo., 339.

3. The note sued on is not negotiable, because it shows on its face that it is given for rent of a certain place for the current year, and consequently for an unearned consideration, and one which was subject to be defeated by anything which lawfully disturbed the possession

of the tenant, or which extinguished the title of the landlord during the pendency of the term. Bank v. Wise, 3 Watts, 394; Lewis v. Hearne, 78 Texas, 276, and cases cited; Martin v. Searcy, 3 Stuart, 50; Mussey v. Holt, 24 N. H., 248.

4. Wren does not show himself to be a purchaser for value. The simple deeding land to which it is not shown he had any title, the value of which is undisclosed, and the character of deed which he executed, is not the payment of value.

*Fisher & Townes* filed an argument for appellant.

*Fred Carlton*, for appellee, cited Adoue v. Tankersley (Tex. Civ. App.), 28 S. W. Rep., 346; Sayles' Civ. Stats., art. 265; 1 Pars. on Con., p. 247, et seq.; Dan. on Neg. Inst., secs. 28, 30; Wilson v. Denton, 82 Texas, 531; Matthews v. Poltheis, 4 Ga., 287; Magee v. Badger, 30 Barb. (N. Y.), 247; Estebrook v. Boyle, 1 Allen (Mass.), 412; 1 Dan. on Neg. Inst., 4 ed., secs. 768, 769a.

KEY, ASSOCIATE JUSTICE.—This suit was brought by the appellee, T. L. Wren, in the District Court of Travis County, to recover from the appellant, S. R. Buchanan, the amount due on a certain promissory note dated November 21, 1892, made payable to R. A. Rutherford, due on or before November 1, 1893, for the sum of $1500, with interest from maturity at the rate of 10 per cent per annum, with a clause providing for attorney's fees, which note was alleged to have been transferred to T. L. Wren by R. A. Rutherford, for a valuable consideration, on October 23, 1893.

In addition to a general denial, the defendant pleaded a particular defense; and without further details concerning the pleadings, it is sufficient to say that they authorized proof of the facts disclosed by the court's findings.

There was a nonjury trial, resulting in a judgment for the plaintiff for the face of the note, interest, and attorney's fee, from which judgment the defendant has appealed.

There is no statement of facts in the record, and the questions of law involved arise out of the findings of fact filed by the trial judge, which findings are as follows:

"1. That in the year 1892, R. A. Rutherford, in the name of his wife, Erin Rutherford, bought from J. Alleine Brown, Winnie R. Brown, and Clara R. Reaville the plantation known as the Reaville plantation, in Washington County, Texas, and for the unpaid purchase money the said R. A. and Erin Rutherford executed their note for a large sum of money secured by vendor's lien upon said tract of land.

"2. That on the 21st day of November, 1892, the said R. A. Rutherford contracted the rental of said farm to the defendant, S. R. Buchanan, for the year 1893, for the sum of $1500, and for the rental thereof

the defendant executed to said R. A. Rutherford the note sued on, the following being a copy thereof, to wit:

" '$1500.                                   " 'NOVEMBER 21, 1892.

" 'On or before the 1st day of November, 1893, I promise to pay R. A. Rutherford, or order, the sum of fifteen hundred dollars for the rent of the Ravelle farm, in Washington County, Texas, for the year 1893; this note to bear 10 per cent interest per annum after maturity until paid; and if suit has to be brought on same for collection, 10 per cent additional for attorney's fees; note to be paid in the city of Austin, Texas.                    [Signed]    'S. R. BUCHANAN.'

"That in March, 1893, the said J. Alleine Brown, Winnie R. Brown, and Clara R. Reaville brought suit in the District Court of Travis County, Texas, against R. A. Rutherford and wife, Erin Rutherford, to collect the notes given for the purchase money on said tract of land, and against S. R. Buchanan, who was in possession of said land, and to foreclose the vendor's lien upon said farm. That said suit was tried on the 23rd day of May, 1893, and judgment rendered against said R. A. Rutherford for a large sum of money, and against all of said defendants in said suit, foreclosing the vendor's lien upon said tract of land, and said land was ordered sold to satisfy said judgment.

"That said suit was on trial several days in said court, and the main purpose of the defense was to get a postponement thereof, so that the defendant Rutherford could collect the rent on the said farm for the year 1893. That the plaintiff, T. L. Wren, knew of this suit. He knew that J. Alleine Brown was suing R. A. Rutherford for the purchase money on a farm in Washington County, and was told by said Brown's attorney and his (Brown's) brother, pending that trial, that Rutherford's object was to get a postponement of the case so that he could collect rent for the year 1893. But said Wren swears that he did not know that it was the Reaville farm, but simply knew that it was a farm that Rutherford had bought from Brown and others. He further says, that he did not know who the parties to that suit were, except J. Alleine Brown as plaintiff, and R. A. Rutherford and wife as defendants, and it is not shown that he did know these facts, unless he is affected by constructive notice under the rule of lis pendens.

"5. That on the first Tuesday in August, 1893, under an order of sale issued on said judgment, after due advertisement according to law, the said Reaville plantation in Washington County was sold to satisfy the judgment against said Rutherford and wife, when J. Alleine Brown became the purchaser thereof, and the sheriff put him in possession thereof in this way: The said S. R. Buchanan was notified that he must attorn to said Brown, and he agreed to do so, and remained in possession of said farm as the tenant of said Brown after the said sale, and said Brown was in possession thereof in that manner after said sale. The plaintiff, T. L. Wren, swore that he did not know of said

sale when he bought the said note, and it was not shown that he did know of it. The testimony does not show whether or not the sheriff's deed was recorded in Washington County.

"6. That on the 10th day of June, 1893, before the sale of said place, the defendant wrote a letter to Colonel R. A. Rutherford, of which the following is a copy:

"'FELDER, TEXAS, June 10 / 93.

"'*Colonel R. A. Rutherford, Austin, Texas:*

"'DEAR SIR—I am informed that the Raville place now belongs to Prof. Brown of Chappell Hill. He has already informed me that he is entitled and will collect the rent on same this year. Will not pay rent to anybody until my *note* is *presented* by person entitled to same by *law.* Let me hear from you. Yours very respt.,

[Sgd]       "'S. R. BUCHANAN.'

"7. That before the maturity of said note, the said Buchanan paid the rent due upon said place to the said J. Alleine Brown as the owner of said land, Brown having threatened to distrain the crop if he did not pay him, and to avoid suit defendant paid Brown the rent.

"8. That on the 25th day of October, 1893, the plaintiff, T. L. Wren, bought said note above set forth (in finding number 2) from R. A. Rutherford, the said Rutherford making the sale through Colonel Fred Carleton, who was his agent, and who, Wren knew, was his (Rutherford's) attorney in the suit tried in the District Court of Travis County, Texas, in which judgment was rendered against Rutherford under which land was sold as aforesaid. Said Carleton and Wren were, and had been for many years, occupying the same offices, but Wren knew that Carleton had been attorney for Rutherford in other cases, and Carleton had been attorney for Wren in several cases, but in the purchase of the note Wren acted for himself, and Carleton acted for Rutherford. After default was made in the payment of the note, Wren employed Carleton to collect it for him. Carleton knew at the time of the sale of the note that it was for the rent of the farm that the said suit was about, and that the farm had been sold and Brown had purchased it under the order of the court rendered in said suit. The foregoing finding contains all that the evidence shows that Wren knew about the matter, unless he is chargeable with constructive notice of the pending of the suit, etc., sale of this tract of land, and the change of tenancy of the defendant from Rutherford to Brown, as aforesaid. At the time of the purchase by Wren of the note he made no inquiry of Carleton about it, but Carleton told him that defendant was a merchant and he understood him to be good for the note, and Wren said he would give him 738 acres of land in Wichita County, Texas, for the note, which Carleton accepted after consultation with Rutherford, and Wren deeded the land to Rutherford, and Rutherford wrote the following across the back of the note and delivered it by his said agent to Wren, to wit: 'Pay to T. L. Wren, or order. Dated Oct. 25, 1893.

[Sgd.] R. A. Rutherford.' The value of the land and the character of Wren's title were not shown.

"9. That no part of said note has been paid, and T. L. Wren is yet the owner and holder of the same, and there is now due thereon, principal, $1500, and $31.25 interest to this date, and as it was necessary to bring this suit to collect this note, there is due on it $153.12 attorney's fees, making a total of $1684.37 now due upon said note under its terms, if the same is collectible in the hands of said Wren."

In his conclusions of law, the trial judge states that the facts do not show that, in the purchase of the note, Wren had, or was chargeable with, knowledge of the defense interposed by the defendant, nor that he acted in bad faith, but on the contrary, that he purchased the note in good faith.

Appellant's assignments of error are as follows:

"1. The court erred in concluding that the note sued on is a negotiable instrument.

"2. The court erred in concluding that plaintiff, Wren, was a bona fide purchaser without actual notice.

"3. The court erred in concluding that plaintiff, Wren, was a bona fide purchaser without constructive notice.

"4. The court erred in not finding, according to agreement of counsel filed before trial, that upon purchase of the Reaville farm, on Tuesday, August 1, 1893, at sheriff's sale by J. Alleine Brown, said Brown was put in possession thereof by the sheriff, and had possession on November 1, 1893, when the note sued on, given for rent of said premises, fell due."

The first assignment of error is not copied even in substance in appellant's brief, as required by the rules; but as appellee has copied it in his brief, and has not objected to its consideration, we have considered the questions raised by said assignment.

*Opinion.*—1. According to the ruling made in Hearne v. Lewis, 78 Texas, 276, the note sued on, and given for the rent of the Reaville farm, not being due when said farm was sold under the judgment against R. A. Rutherford, it would seem that, as to Rutherford, the claim for rent and the right to collect the note passed by said sale to J. Alleine Brown, who purchased the farm at said sale; and it necessarily follows, that unless appellee is entitled to protection as a bona fide holder of negotiable paper, he has no greater right than Rutherford, his assignor, had.

Appellant contends that the instrument sued on is not negotiable, (1) because it provides for payment "on or before" a given date, thereby making the time of payment uncertain; (2) because the promise to pay is conditioned upon a consideration which had not then been, and might never be, received; and (3) "because the note shows on its face that it is given for rent of a certain place for the current year, and consequently for an unearned consideration, and one which was subject

to be defeated by anything which lawfully disturbed the possession of the tenant or which extinguished the title of the landlord during the term of the lease."

Concerning the first objection, while it is supported by some decisions, the weight of authority is against it, and agrees with Judge Cooley, who, speaking for the court, in Mattison v. Marks, 31 Michigan, 421, said: "The legal rights of the holder are clear and certain; the note is due at a time fixed, and it is not due before. True, the maker may pay sooner if he shall choose, but this option, if exercised, would be a payment in advance of legal liability to pay, and nothing more. Notes like this are common in commercial transactions, and we are not aware that their negotiability is ever questioned in business dealings. It ought not to be questioned for the sake of any distinction that does not rest upon sound reason." See also Daniel on Negotiable Instruments, section 43, and Tiedeman on Commercial Paper, section 25a, and cases cited.

The second and third contentions are so nearly the same that they may be considered together. A promissory note, to be negotiable, must contain among other things an absolute and unconditional promise to pay; but it is not essential to negotiability that such an obligation be based upon a consideration received at or before the execution of the note. Mutual promises become considerations for each other, although the contract may not require both parties to perform at the same time. A may agree to deliver certain property to or to perform certain services for B six months after the date of the contract, and not before, for which B may execute his promissory note for $1000, payable in thirty days from the date of the agreement to the order of A; and not only could a third person, acquiring the note in due course of trade before maturity for value and in good faith, enforce its payment as soon as due, but so also could A; and though the obligation on A's part would still be unperformed, his unbroken promise to perform would stand as the consideration binding B to perform his undertaking. This illustration is given mainly for the purpose of emphasizing the proposition that a promise, made in consideration of a reciprocal undertaking, is not necessarily a conditional promise.

When analyzed, the instrument under consideration is found to contain a distinct, absolute and unqualified promise to pay to a designated person, or his order, a specified sum of money, on or before a given date, and these comprise all the elements of a promissory note. Tied. on Com. Paper, sec. 6. True it is, it refers to the consideration moving appellant to execute the note, by stating that it is for the rent of the Reaville farm for the year 1893, but it does not make the obligation to pay dependant upon the possession and enjoyment of the farm for that year. On the contrary, the note is payable two months before the end of the year 1893, which clearly shows that enjoyment of the premises for the year 1893 is not a condition precedent to the obligation to pay, as fixed by the instrument.

Instruments, negotiable in form, import a consideration; and the mere fact of such an instrument's stating or referring to the consideration can not in our opinion affect its validity or negotiability, unless such statement or reference discloses fraud or an illegal consideration. A standard author states the rule thus: "The mere statement of the consideration in a bill or note does not put the holder upon inquiry whether or not it really passed, or has failed in any respect. It is rather assuring than otherwise, for it is evidence, if the note be genuine, that it was given for value; and the specification for what value can no more challenge the holder's investigation than the omission of such specification. In legal effect it does not qualify the paper in any manner." Dan. Neg. Inst., sec. 797. See also Hereth v. Bank, 34 Ind., 380; Doherty v. Perry, 38 Ind., 15; Bank v. Barrett, 38 Ga., 126; Heard v. Bank, 8 Neb., 16; Kelley v. Whitney, 45 Wis., 110; Stevenson v. O'Neal, 71 Ill., 314; Siegel v. Bank, 23 N. E. Rep., 417; Ferris v. Tavel, 87 Tenn., 390; Bank v. Michael, 96 N. C., 53.

In the Tennessee case just cited there was a parol contract for the sale of certain lots for $8000, one-half cash and the balance in six and twelve months. The deferred payments were evidenced by two notes for $2000 each. White claimed protection as a bona fide holder of one of these notes, which recited on its face, that it was given "for the third payment on twenty-eight lots in Rains' addition, ninth district, this day purchased of Albert Tavel." It was argued that this recital was sufficient to put White upon inquiry and charge him with notice that the sale of the lot was verbal, and therefore not binding upon either party; and that with such notice the indorsee of a purchase money note can not be allowed to collect it after a rescission of the sale. After citing several decisions, and the text from Daniel above quoted, the court say: "Following the weight of authority, and what is regarded as the better public policy, we hold that the statement of the consideration in the face of the note did not impair its negotiability, and should not be allowed to prejudice the right of White to enforce its collection. The statement is not altogether superfluous. It would fill the office of identifying the note as one given for the purchase money of land in a case where its identification as such becomes important. Such cases are frequently before the courts. Had the complainants desired to make the note payable *on condition* that their contract for the land should be completely executed, or had it been their purpose to charge third parties with notice of any equities existing against the payee of the note, they should have so stated in or on some part of the note itself. That would have carried full knowledge to White, and afforded complainants perfect protection." 87 Tenn., 391.

In Bank v. Michael, supra, the court say: "The mere fact that the particular consideration of the note is mentioned in it, and that it possibly might involve or give rise to equities between the parties to it, can not prevent its negotiability by indorsement. To have this effect, it must appear from the reference to it in the note, that it qualifies the

promise to pay the sum of money specified, and renders it conditional, or the amount to be paid uncertain. A different rule would much embarrass business transactions involving negotiable notes and bonds, and tend to impair the freedom and confidence that ought to prevail and be upheld in the course of general business and trade."

In Smith v. Clopton, 4 Texas, 109; Gee v. Saunders, 66 Texas, 333, and Gannon v. Bank, 83 Texas, 275, notes reciting that they were given for purchase money for land were treated as negotiable instruments; and in Adoue v. Tankersly, 28 Southwestern Reporter, 346, the Court of Civil Appeals for the First District held, that the recital in a note that it was given for rent does not charge a purchaser with notice of a possible failure of consideration by the maker's eviction on foreclosure of a mortgage on the leased premises.

. Not only is the correctness of the decision in the latter case disputed by appellant, but it is also contended, that this case is distinguishable from that and other cases in which the consideration, though stated, is not shown by the face of the instrument to be executory or unearned at the time the instrument was executed. This difference and the alleged distinction that should therefore govern in deciding this case are pressed by appellant's counsel in an argument characterized by ability and zeal. Nevertheless, we are unable to concur in the proposition that the difference referred to requires the application of a different rule of law.

On the subject of notice, the difference between the note at bar and one merely reciting that it is given for land or for rent is very slight, if any. This note discloses the possibility of a failure of consideration. So does a note reciting that it is for purchase money of land, or for rent. As to the original payee in, or any other person in possession of, it is possible that some one else may have a better right to either note; but such possibility is not disclosed by the one any more than by the other. Therefore the fact that the note in suit carried notice on its face that Rutherford, by divesting himself, or being divested of title to the premises for the rent to which the note was given, might lose his right to enforce payment thereof, does not in a legal sense make it different from any other note. The person designated as a payee in any instrument may by contract deprive himself of any right thereunder; yet if the instrument be negotiable in form, and allowed to remain in his possession, he may, before maturity, sell it to a bona fide purchaser without notice, and such person can enforce its payment. After all, the true test is, does the reference to the consideration render the promise to pay conditional, or disclose fraud or an illegal consideration? If not, and the instrument be negotiable in other respects, it must, as to bona fide purchasers before maturity, be treated as commercial paper, and not subject to defenses that might avail against the original payee. Tested by this rule, the instrument in question is negotiable.

Turning again to the authorities, it must be conceded that one text writer is against us and supports appellant's contention. We refer to Mr. Lawson, who, in discussing negotiable instruments, says: "But the consideration expressed on the face of the instrument must not be executory." 4 Laws. Rights, Rem., Prac., sec. 1592. Drury v. Macaulay, 16 Meeson & Welsby, 146, and Hays v. Gwin, 19 Indiana, 19, are the only cases cited by the authority to support this text.

In the first case, the instrument involved read as follows: "Drury v. Vaughan. In consideration of W. Drury not taking any further proceedings in the above actions, I do hereby undertake with said W. Drury, that I will pay unto the said W. Drury, 3 pounds 5 shillings every quarter of a year from this day, until the whole of the principal money now due from Messrs. J. & T. Vaughan to Mr. Drury, 26 pounds 1 shilling, with lawful interest for the same from the date hereof, be fully paid and satisfied, and the first of such quarterly payments to become due on the 30th day of October next. It is understood that this undertaking is not to be a release or a discharge of the note signed by Mr. J. Vaughan and Mr. T. Vaughan to the said W. Drury, on the 9th of March, 1840, but as an additional security for the above mentioned amount now due on such note, with the interest. Dated this 30th day of July, 1842. S. H. Macaulay." The court held that the instrument did not contain an unconditional promise to pay, and was not a promissory note.

The instrument construed in the Indiana case was in the following form: "$1141.56. Lafayette, Ind., April 16, 1856. On or before the first of April, 1858, I promise to pay Henry C. Ash, or order, eleven hundred and forty-one dollars and fifty-six cents, for value received, and without any relief whatever from the appraisement laws; provided, however, that prior to the time when this note becomes due said Ash shall pay and have satisfaction entered, of record of a certain mortgage given by him to Levi Reynolds, for two hundred and fifty dollars, dated August 26, 1851, which mortgage is on the lands for which this note is given. Samuel Shenk." The court held that the instrument was not a promissory note, because it was not payable absolutely and at all events.

In neither of these cases did the instrument contain an unconditional promise to pay, and therefore they were not promissory notes, and, not being such, of course were not negotiable. It is therefore submitted that these cases do not support Mr. Lawson's text.

In Siegel v. Bank, decided by the Supreme Court of Illinois (23 Northeastern Reporter, 417), the instrument sued on was in the following terms: "Form B. Dalziel's Railway Advertising. $300. Chicago, March 5, 1887.—On July 1, 1887, we promise to pay D. Dalziel, or order, the sum of three hundred dollars, for the privilege of one framed advertising sign, size —— x ——, in one end of each of 159 street cars of the North Chicago City Railway Co., for a term of three months from May 15, 1887. No. ——. Siegel, Cooper & Co."

Considering the question of its negotiability, Chief Justice Shops, delivering the opinion of the court, says: "It is not contended that the indorsees had any other notice than that contained in the instrument itself; and it is apparent that at the time of its indorsement, which was the day of its execution, no right to the consideration had accrued to the maker. It is a promise to pay a certain sum of money at a day certain, for a consideration thereafter to be rendered, and depends for its validity upon the implied promise of the payee to furnish the consideration at the time and in the manner stipulated. That is, it is a promise to pay a sum certain on a particular day, in consideration of the promise of the payee to do and perform on his part. A promise is a valuable consideration for a promise. But the question remains whether the statement, or the recital of the consideration, on the face of the instrument, impairs its negotiability, and in this instance amounted to a condition precedent. The mere fact that the consideration for which a note is given is recited in it, although it may appear thereby that it was given for or in consideration of an executory contract or promise on the part of the payee, will not destroy its negotiability, unless it appears through the recital that it qualifies the promise to pay, and renders it conditional or uncertain, either as to the time of payments or the sum to be paid."

In Sadler v. White, 14 Louisiana Annual, 177, the court say: "Plaintiff received the note before its maturity and before a failure of the consideration. Even if it were known to him, taking it, that the consideration was future and contingent, and that there *might* be offsets against it, this would not make him liable to the equities between the defendants and payee. If such were a sufficient defense, it would destroy materially the negotiability of notes, for in almost every case of the purchase of a note, the buyer knows, there *might* be equities between the original parties to the same. It can not affect the negotiability of a note, that its consideration is to be hereafter realized, or that from some contingency it *may* never be enjoyed. Any one having sufficient confidence in another to give his written obligation for something to be given and enjoyed hereafter is at liberty to do so, and the maker can not censure any future holder of the note for having purchased it, and for seeking to hold him liable, for it was the faith of the maker in the payee, that he would execute his promise and allow no obstacles to defeat it, that created the note and gave currency to it."

In Bank v. Cason, 39 Louisiana Annual, 865 (2 Southern Reporter, 881), the consideration was future and contingent, and that fact was known to the transferee, who acquired the note before maturity; yet, although there was a failure of consideration, it was held no defense to a suit on the note brought by the transferee. The court say: "As the consideration of the note was a valid one, plaintiff could not have been affected prejudicially by the knowledge of it. If the consideration be lawful, the knowledge of that consideration can of itself have no bearing on the rights of the transferee. It is the knowledge of the

failure of consideration or secret equities between the original parties thereto that would prevent recovery thereon."

In Davis v. McCready, 17 New York, 230, it is held, that the breach of an executory contract which formed the consideration for the acceptance of a bill of exchange is not a defense, in whole or in part, against an indorsee who took the bill before maturity for value, with notice of the contract, but without notice of its breach. In the course of the opinion the court say: "If one will issue his negotiable paper and send it into the world, in consideration of an engagement of a party with whom he deals to do some act for his benefit in the future, he declares in effect that he will pay the note or bill according to its terms to any one who shall become the holder for value in the course of business, and rely for his own indemnity upon the promise he has received as the consideration for issuing it."

A text writer already quoted, in treating of accommodation paper, says: "Nor is it a good ground for defense against a bona fide holder for value that he was informed that the note was made or the bill accepted in consideration of an executory contract, unless he was also informed of its breach." Daniel Neg. Inst., sec. 790. See also Craigg v. Sibbett & Jones, 13 Pa. St., 238.

It was held in Bank v. Michael, supra, that the fact of the instrument's being payable to "order" indicated a purpose to make it negotiable. Such is the wording of this instrument; and besides, in executing it, appellant stated twice on its face that it was a "note," and as one essential element of a note is an unconditional promise to pay, therefore designating it a "note" on its face tends to sustain the construction we have placed upon it. Of course, such a designation is not of controlling force; but in case of doubt, or when the purport of the instrument and the name given it are in harmony, then such designation is sufficient.

2. The questions presented by the second and third assignments of error may be treated together; and much that has already been said, and several of the cases cited are pertinent to this branch of the case. As already shown, the face of the instrument did not charge appellee with notice of the defense interposed by appellant. The mere fact that the note disclosed a possibility of the existence of circumstances that would defeat Rutherford's right to recover on the note did not cast upon appellee any duty of investigation; and the court having found that he had no actual notice of the defect in Rutherford's title, there being no statement of facts, and the facts recited in the findings not necessarily showing the contrary, that finding must stand.

As to constructive notice, it is settled by the decided cases (Board v. Railway, 46 Texas, 316; Gannon v. Bank, 83 Texas, 274), that if the note sued on is a negotiable instrument, the suit by J. Alleine Brown and others against Rutherford and wife in the District Court of Travis County on the purchase money notes for the leased premises, and the judgment rendered therein, did not charge appellee with notice.

The doctrine of notice by lis pendens has no application to negotiable instruments.

And the possession disclosed by the court's findings does not prove notice. Appellant took possession of the Reaville farm under his lease from Rutherford, the payee named in the note, and he was in possession when Rutherford transferred the note to appellee. It is true, that after Brown's purchase of the farm under the judgment against Rutherford, appellant agreed to attorn to Brown, and thereafter, as between him and Brown, he held under Brown; but appellee, having no notice that appellant had agreed to attorn to Brown, had the right, without inquiry, to assume that he was still holding under Rutherford. We do not wish to be understood, however, as holding that if Brown had, in person, been in possession of the farm when appellee bought the note, such possession would have charged appellee with notice of the defense interposed by appellant. That question is not before us.

The court's findings show that, as a consideration for the note in suit, appellee conveyed to Rutherford a tract of land in Wichita County, Texas, and that the character of appellee's title thereto and the value of said land were not shown. Appellant contends, that therefore appellee can not be regarded as a bona fide holder of the note. This position is not tenable. The burden of proof was not upon appellee to show that he paid a valuable consideration for the note. Being the indorsee of a negotiable instrument, he is presumed to have paid a valuable consideration for it, and the burden was upon appellant to show that he had not. McAlpin v. Finch, 18 Texas, 831; Tied. on Com. Paper, sec. 303; Dan. Neg. Inst., sec. 812.

Concerning the argument based upon the business relations and intimate associations shown by the recitals in the court's findings to have existed between appellee and the agent who acted for Rutherford in selling the note to appellee, and the failure of appellee to make further inquiry of said agent, and his knowledge that J. Alleine Brown had sued Rutherford and wife for the purchase money of a farm in Washington County, etc., our conclusion is, that they do not necessarily lead to the conclusion that appellee was not acting in good faith or was chargeable with notice of appellant's rights; and, there being no statement of facts, the court's conclusions that appellee acted in good faith and without notice when he bought the note, can not be disturbed.

Good faith is the criterion by which the right to protection as a bona fide holder of negotiable paper is to be tested. This was the English rule until Lord Tenterden, in Gill v. Cubitt, 3 Barn. & Cres., 466, held, that although the holder of negotiable paper had given value for it, yet if he took it under circumstances which ought to have excited the suspicions of a prudent and careful man, he could not recover. In a later case (Crook v. Jadis, 5 Barn. & Ad., 909), Lord Denman instructed the jury to find for the plaintiff, who claimed to be a bona fide holder, if they thought he had not been guilty of gross negligence. Subse-

quently, in Goodman v. Harvey, 4 Ad. & E., 874, the original rule of bona fides was restored, the Court of King's Bench holding, that while gross negligence might be evidence tending to show mala fides, and as such admissible, it did not in itself amount to proof of mala fides and was not sufficient to deprive the holder of his right to recover.

In the United States, while there are some decisions to the contrary, the weight of authority appears to be in favor of the prevailing English rule, which is more in accord with the methods and necessities of modern commerce. Dan. Neg. Inst., sec. 775, and cases there cited, including Murray v. Lardner, 2 Wall., 110; Cromwell v. County of Sac, 96 U. S., 51; Shaw v. Railway, 101 U. S., 564; Swift v. Smith, 102 U. S. 444; Greneaux v. Wheeler, 6 Texas, 516. It follows, therefore, as said by Mr. Justice Field, in considering a negotiable instrument, in Cromwell v. County of Sac, supra: "Mere suspicion that there may be a defect of title in its holder, or knowledge of circumstances which would excite suspicion as to his title in the mind of a prudent man, is not sufficient to impair the title of the purchaser. That result will only follow where there has been bad faith on his part." 96 U. S., 58.

3. In regard to the alleged error of the court in not finding, on the subject of possession of the farm, in accordance with a written agreement signed by the parties and on file when the cause was tried, it would perhaps be sufficient to say, that it is not made to appear that the agreement referred to was put in evidence or called to the attention of the court. Besides, it may have been modified by a subsequent agreement, or explained by parol evidence that justified the court in the finding made on that subject. There being no statement of facts in the record, and nothing to show that there was not testimony before the court that warranted its finding, we must presume that there was, and sustain the finding.

Appellant has presented no reversible error, and the judgment of the District Court will be affirmed.

*Affirmed.*

Delivered May 15, 1895.