**CRUM et al. v. LANE CO. et al.    (No. 328.)**

(Court of Civil Appeals of Texas. Waco. March 25, 1926. Rehearing Denied May 27, 1926.)

**I. Bills and notes ⬳165.**

Statement in note that its payment is subject to or controlled by named contract makes instrument nonnegotiable, irrespective of Rev. St. 1925, art. 5932, § 3, par. 2.

**2. Bills and notes ⬳163.**

Mere statement that note is given in payment for certain named contract, which is simply recital of consideration, does not make note nonnegotiable.

**3. Bills and notes ⬳165.**

To destroy negotiability of note, reference to extrinsic agreement must be such as to show that note is burdened with and subject to conditions of agreement.

**4. Bills and notes ⬳165.**

Mere reference to or statement of origin of contract in note without making latter subject thereto does not affect its negotiability.

**5. Bills and notes ⬳165.**

Trade acceptances *held* not rendered nonnegotiable by statement written thereon; "maturity being in conformity with original terms of purchase."

**6. Bills and notes ⬳164.**

Trade acceptances *held* not conditioned on seller's performance, as respects negotiability.

Stanford, J., dissenting on motion for rehearing.

Appeal from District Court, McLenn County; Sam R. Scott, Judge.

Action by the Lane Company and others against Mrs. B. V. Crum and others to cancel certain trade acceptances. Judgment for plaintiffs and defendants appeal. Reversed,

and judgment rendered for the defendant named on her cross-action.

Spell, Naman & Penland, of Waco, for appellants.

Williamson & McDonnell, of Waco, for appellees.

BARCUS, J. On June 24, 1924, W. E. Williams, under the name of Cascade Products Company, entered into a contract with the Lane Company, appellee, as follows:

out of the purchase of goods from the drawer; maturity being in conformity with original terms of purchase.

"Cascade Products Company, W. E. Williams.

"Accepted at Waco, Texas, on June 24, 1924, payable through Central Nat. Bank.

"Firm: The Lane Company, by G. H. Lane, Authorized Buyer."

Indorsed:

"Cascade Products Company, W. E. Williams.

"For collection for B. V. Crum, by Ellis P. House, Atty."

"Aristocrat Line.

| Date sold. 6—24—24. | No. ——. Salesman E. J. Ferguson. | Date billed. |
|---|---|---|
| Terms. Reg. | Ship to the Lane Company. | |
| Rating. | Town and state, Waco, Texas. | Ledger. |
| | Ship by M., K. & T. | |

"Special Agency Agreement.

"Company hereby grants the undersigned dealer the sales right for the Aristocrat Line, for the period of this agency agreement of one year from date hereof.

| Quan. | Volts. | Cur. | Cyc. | Goods shipped for special campaign. | Retail at | Total Retail. | Net amt. |
|---|---|---|---|---|---|---|---|
| 10 | 110 | AC | 60 | Artist dish wash mach. model A | 125.00 | 1,250 | |
| 2 | 110 | AC | 60 | Artist dish wash mach. model B | 185.00 | 370 | |
| | | | | | | 1,620.00 | |
| | | | | Less 30% net frt. allowed | | 486.00 | 1,134.00 |

"Said dealer agrees to pay a commission of 10 per cent. of sales price to company's salesman on sales made directly by them, take up shipments promptly, reorder machines as needed, furnish list of names for mailing and advertising, and co-operate in promoting mutual interest.

"Company agrees, by special campaign, to sell or cause to sell goods listed above within 60 days from arrival of shipment, or take back, according to the period of this agency agreement, any of such goods remaining unsold. Also will handle acceptable lease sales contracts and remit amount due thereon by check direct to dealer and said dealer will in turn pay company according to acceptances herewith.

"Only the written conditions appearing hereon in reference to this order are binding on the company.

"Firm: The Lane Company,
"By H. G. Lane.
"Cascade Products Co. of Texas."

On the same date and in connection therewith, the Lane Company accepted three trade acceptances drawn by the Cascade Products Company, each for $378 and due 60, 90 and 120 days after date, the first one being as follows:

"Trade Acceptance.

"$378.00        Dallas, Texas, June 24, 1924.

"To the Lane Company, P. O., Waco, Texas: Sixty days after date pay to the order of ourselves at Dallas, Texas, the sum of three hundred seventy-eight and no/100 dollars.

"The obligation of the acceptor hereof arises

The number of washing machines called for under the above contract were received by the Lane Company some time in September, 1924. On October 29, 1924 appellee brought this suit against W. E. Williams and Mrs. B. V. Crum and husband to cancel the three trade acceptances, on the ground that the machines were not as represented, and the machines were tendered to appellants. Appellant Mrs. Crum answered by a cross-action against appellee, alleging that she was the owner of the trade acceptances for value before maturity, and prayed for judgment against appellee for the amount thereof. The cause was tried before a jury and resulted in a judgment being rendered canceling the three trade acceptances and awarding to Mrs. Crum the washing machines.

[1, 2] Appellee's contention is that the statement in the trade acceptances that "the obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with original terms of purchase," makes same nonnegotiable. The original contract states in the heading that the terms of the sale are regular, but does not state what the regular terms are. The last part of the second paragraph of said agreement states that—

"Said dealer (being the Lane Company) will in turn pay company according to acceptances herewith."

Paragraph 2 of section 3 of article 5932 of the Revised Statutes provides that it does not make a note nonnegotiable if it contains "a statement of the transaction which gives rise to the instrument." When a, note, contains a statement that its payment is subject to or controlled by a named contract, said statement makes the instrument nonnegotiable (Parker v. American Exchange Bank [Tex. Civ. App.] 27 S. W. 1071; Wellington Ry. Committee v. Crawford [Tex. Com. App.] 216 S. W. 151), and to the same effect is a statement contained in a note that it is to be paid out of "current funds" (First State Bank v. Hidalgo Land Co., 114 Tex. 339, 268 S. W. 144). A statement, however, which simply states that it is given in payment for a certain named contract, or which is simply a recital of the consideration for which the note is given, does not make same nonnegotiable. 3 R. C. L. 918; Metropolitan Nat. Bank v. Vanderpool (Tex. Civ. App.) 192 S. W. 589; Buchanan v. Wren, 10 Tex. Civ. App. 560, 30 S. W. 1077; Utah Lake Irrigation Co. v. Allen, 64 Utah, 511, 231 P. 818, 37 A. L. R. 651.

[3-5] The general rule seems to be that a reference in a note to an extrinsic agreement, in order to destroy its negotiability, must be such as to show that it is burdened with and subject to the conditions of the named contract, and that a simple reference to or a statement of the origin of the contract, without making same subject thereto, will not affect its negotiability. Measured by said rule, we do not think that the statement contained in the trade acceptances in question, "maturity being in conformity with original terms of purchase," made same nonnegotiable. If said statement is sufficient to require a purchaser to make an investigation, and in making same he had read the original contract, he would have found that appellee stated in said contract that it was to pay for the machines purchased "according to acceptances herewith," and the acceptances which it gave were payable 60, 90 and 120 days from the date of their execution.

[6] Appellee contends that, under the terms of the contract it was not to pay said trade acceptances until the Cascade Products Company had sold the machines, and that, if same were not sold, said company was to take back the machines and cancel the notes. We do not agree with this construction of the contract. The contract provides that the Lane Company is to execute its acceptances for the money and to pay same. The Cascade Products Company agreed that it would sell the machines within 60 days after they arrived, and, if any of the machines were left on hand at the end of the contract period (being one year), that it would take same back. The payment of the trade acceptances is not contingent on the company performing its part of the agreement. The evidence shows that the machines were not received by appellee until some time in September, when at least one, if not two, of the trade acceptances, had become due, and all of them had been sold to appellant Mrs. Crum for a valuable consideration. We do not think the language in the trade acceptances, which were drawn by the Cascade Products Company and payable to itself and accepted by the Lane Company, can be construed to mean that the payment thereof was contingent upon or subject to any conditions, contingencies, or controversies that might arise between the Lane Company and the Cascade Products Company with reference to the washing machines in question. Appellee sought to cancel said trade acceptances because the washing machines were not of the kind, character, and durability as those purchased, in that they were made of iron instead of copper, and the jury found said fact to be true. The Lane Company, when it received the machines, unpacked only one of them, and did not make any effort to sell any of them, and tendered them to appellants.

The only defense interposed by appellant on which it attempted to offer evidence to defeat appellee's right to recover on the trade acceptances being based on the theory that the trade acceptances were nonnegotiable instruments because they contained the statement, "The obligation of the acceptor arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of purchase," and since, in our opinion, said clause does not affect their negotiability, it becomes our duty to reverse and render this cause.

The judgment of the trial court is reversed, and judgment is here rendered for the appellant Mrs. B. V. Crum against the Lane Company, a corporation, for $1,134, with 6 per cent. interest from the 29th day of October, 1924.

On Appellees' Motion for Rehearing.

PER CURIAM. Rehearing denied.

STANFORD, J. Not being able to agree with my associates in the disposition of appellees' motion for rehearing, I hereby file the following dissenting opinion:

On the original hearing we held that the acceptances sued upon herein were negotiable instruments, and that, as Mrs. Crum purchased same before maturity, she was not chargeable with notice of any defenses to same and was entitled to recover, so we reversed and rendered judgment for her. After a further investigation of the question, it is thought in this holding we were in error. The suit was based upon three acceptances drawn by the Cascade Products Company, payable to the order of themselves, on the Lane Company, and by the Lane Company accepted and then indorsed by the Cascade Products Company. Said acceptances are fully set out in

the original opinion. Each of said accept-
ances, according to the reading of same, pur-
ported to create an obligation to pay the
holder $378, and purported to be due in 60,
90, and 120 days. Each of said acceptances
contained the following clause written in
the face of same:

"The obligation of the acceptor hereof arises
out of the purchase of goods from the drawer;
maturity being in conformity with original
terms of purchase."

There are two matters that stand out very
prominently by reason of the above indorse-
ment, to wit: That "the obligation of the
acceptor arises," not by reason of the terms
of the acceptance, nor by reason of the ac-
cepting of said acceptance, but out of the
fact that acceptor has purchased goods from
the dealer. Then, in order for Mrs. Crum to
know what the obligation of the acceptor
was, she would necessarily have to look be-
yond the acceptance, she would have to ex-
amine the supposed contract of purchase, and
when she did this she would learn there was
no purchase of said goods, but only a "special
agency agreement." Again, said acceptances
on their face appear to fall due in 60, 90,
and 120 days, but said clause above referred
to recites: "Maturity being in conformity
with the original terms of purchase." If the
original terms of purchase had provided that
said acceptances matured in 6, 9, and 12
months after date, then would not such pro-
vision of the contract have been controlling?
And if this be true, before Mrs. Crum could
know definitely when said acceptances ma-
tured, would she not be required to examine
the original terms of said supposed pur-
chase? And when she did this, she would
have learned there was no purchase of said
goods, but only a "special agency agreement,"
entered into, by the terms of which, in effect,
said goods were so left at the place of
business of the Lane Company and the Cas-
cade Products Company agreed to put on a
special campaign and sell said goods itself,
and, if it failed to sell said goods in 60 days,
to take them back, etc. In fact, it is thought,
under the terms of the contract, the obliga-
tion of the acceptor, as well as the maturity
of all said acceptances, was dependent upon
a sale of said goods by the Cascade Company
or by the joint efforts of the Cascade Com-
pany and the Lane Company, and that Mrs.
Crum was chargeable with notice of the pro-
visions of said supposed contract of purchase
as they affected the obligation of the accep-
tor, and also the maturity of said acceptances,
and this being true, said acceptances were
not negotiable, and that the trial court was
correct in so holding and admitting appellee's
evidence of fraud, etc.

Appellee's motion for rehearing, it is
thought, should be granted, and the judg-
ment of the trial court affirmed.