### HASSARD et al. v. MAY et al.

(Court of Civil Appeals of Texas. Austin. Oct. 30, 1912.)

1. EVIDENCE (§ 183\*)—PAROL EVIDENCE—SUFFICIENCY OF PREDICATE—LOST INSTRUMENT.

Proof that a bank cashier, to whom a bond had been delivered to be kept in the bank, was dead and that diligent but unsuccessful search had been made for the bond at the bank, and that it was lost, was sufficient to authorize parol evidence of its contents, though it was not shown that search had been made among the cashier's private papers.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. § 183.\*]

2. DAMAGES (§ 120\*) — BREACH OF SPECIAL CONTRACT—MEASURE OF DAMAGES.

The measure of a purchaser's damages for the breach of a special contract providing for the payment of damages from failure to pay off or remove a lien on the property is the value of the land where the purchaser loses the land, and is not limited to the money paid, with interest.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. § 120.\*]

3. DAMAGES (§ 1\*) — COMPENSATORY — MEASURE.

Fair compensation is the true test of actual damages in all cases.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 1; Dec. Dig. § 1.\*]

4. BILLS AND NOTES (§ 343\*) — NEGOTIABLE INSTRUMENTS—INNOCENT PURCHASER.

Purchasers of negotiable notes given in payment of land were entitled to protection as innocent purchasers where they purchased in good faith before maturity for a valuable consideration, without actual knowledge or notice of stipulations in the deed requiring money paid on other notes to be credited on the notes in suit, though each of the notes in suit referred to the deed merely for the purpose of description.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 853–855, 864, 865; Dec. Dig. § 343.\*]

Appeal from District Court, Coleman County; John W. Goodwin, Judge.

Action by C. Q. Hassard and others against A. P. Penny, J. L. May, and others. From the judgment, C. Q. Hassard and others ap-

peal. Affirmed in part, and in part reversed and remanded.

Woodward & Baker, of Coleman, for appellants Hassard and Padelford. Walter C. Woodward and Snodgrass & Dibrell, all of Coleman, for appellant Stephens. Weatherred & McDaniel, of Coleman, for appellees.

KEY, C. J. C. Q. Hassard and William H. Stephens, as executors of the estate of John Hassard, deceased, brought this suit against A. P. Penny, Ellard Mitchell, R. King, J. H. Quinn, J. L. May, R. Henderson, Mrs. E. R. Stephens, Joe Tolson, and John Tolson, seeking to recover upon a vendor's lien note for $2,300, and to foreclose the lien on three tracts of land. Joe Tolson filed a cross-bill against his codefendants Mitchell, Penny, King, Quinn, May, Henderson, and the plaintiffs Stephens and Hassard and W. S. McDonald upon certain notes executed by King and secured by a vendor's lien upon a portion of the land upon which the plaintiffs sought to foreclose their lien, and asking for a marshaling of the assets on sale of the property. Thereafter William H. Stephens filed a plea of intervention against A. P. Penny, W. S. McDonald, R. King, J. L. May, and R. Henderson, in which he sought to recover upon two vendor's lien notes executed by McDonald and payable to Penny, and secured by a vendor's lien upon 160 acres of the land described in the plaintiffs' petition, and he asked for a marshaling of the assets. Thereafter the defendant R. Henderson filed an amended answer, which included a cross-bill against his codefendant Mrs. E. R. Stephens and the plaintiff and intervener W. H. Stephens, seeking to recover certain sums of money paid by him on certain notes executed by W. S. McDonald and payable to the order of A. P. Penny. The defendant J. L. May filed a cross-action against the defendant J. H. Quinn and the plaintiff C. Q. Hassard, seeking to recover upon a title bond given by them to protect him against the note and lien sued upon by the plaintiffs.

There were other pleadings filed, which it is not necessary to describe. There was a jury trial which resulted in a judgment for the plaintiffs as executors of the estate of John Hassard, deceased, against the defendants A. P. Penny and Ellard Mitchell for $3,-340.65 principal, interest, and attorney's fees due on the note sued upon by the plaintiffs, and for the foreclosure of the vendor's lien by which that note was secured upon the three tracts of land described in the plaintiffs' petition, as against all the other parties to the litigation, except that there was no foreclosure against the defendant R. Henderson on one of the tracts of 160 acres for $303.69 of the judgment recovered by the plaintiffs as attorney's fees. Judgment was also rendered in favor of W. H. Stephens, as intervener, against the defendant W. S. McDonald for the sum of $532.26, with a fore-

closure of a second lien on the 160-acre tract of land subject to the prior lien foreclosed in behalf of the plaintiffs as executors of the estate of John Hassard, deceased; also judgment in behalf of Joe Tolson on his cross-bill against the defendants R. King and J. L. May for $661.78, with a foreclosure of a second lien on 195 acres of the land subject to the prior lien foreclosed in behalf of the plaintiffs. It was further adjudged that the defendants J. L. May, R. King, and R. Henderson were each owners in severalty of certain portions of the land involved, and the decree undertook to marshal the assets and adjust the equities between said parties and the several lienholders, as to which no complaint is made in this court. Judgment was also rendered in favor of R. Henderson on his cross-bill against Mrs. E. R. Stephens and W. H. Stephens for the sum of $963.89, and in favor of W. H. Stephens against W. S. McDonald for $532.26, and foreclosure of the lien on the 160-acre tract of land, and ordered that the money, when collected, be applied to the payment of the plaintiffs' judgment, unless it is otherwise paid. The defendant J. L. May recovered judgment on his cross-action against C. Q. Hassard and D. A. Padelford for the value of the 45⁶/₁₀-acre tract of land, which the jury assessed at $1,276.-80, less $726.57, the amount owing by J. L. May on a note given by him payable to J. H. Quinn for the tract of land referred to, leaving a balance of $550.13, which was the amount for which judgment was rendered in favor of J. L. May against Hassard and Padelford. W. H. Stephens and Mrs. E. R. Stephens have appealed from that portion of the judgment which was rendered against them and in favor of R. Henderson for $963.89; and C. Q. Hassard and D. A. Padelford have appealed from the judgment rendered against them in favor of J. L. May for $550.13. We will dispose of the latter appeal first.

May alleged in his cross-action that he had purchased from J. H. Quinn the 45⁶/₁₀-acre tract of land, and that Quinn, as principal, and C. Q. Hassard and D. A. Padelford, as sureties, had executed to him a title bond conditioned: "That whereas John Hassard was the owner and holder of the following described notes, to wit: One note for the principal sum of $2,300, dated March 16, 1903, due 5 years from date, at the rate of 10 per cent. per annum, payable annually, for which said five interest coupon notes were executed and given, each dated March 16, 1903, each for the sum of $230 and due 1, 2, 3, 4, and 5 years from date respectively; and whereas said notes are a lien on a tract of land this day conveyed by J. H. Quinn to J. L. May, which said tract of land is described as follows"—said bond setting out and describing the above-described tract of land, and said bond further binding said principal and sureties that the said Quinn would pay off and discharge all of said notes

at maturity thereof and secure a release of the lien on the above-described land, and providing, if said Quinn should fail and refuse to pay off and discharge said notes at maturity thereof, that said Quinn, Hassard, and Padelford would pay to the said May all damages that might accrue to the said J. L. May by reason of the said Quinn so failing to pay off and discharge said notes, and further alleging that the said Quinn and his sureties for him, or any one else, never paid off and discharged said notes, but that plaintiffs had instituted suit on same and were seeking to foreclose the vendor's lien on the J. L. May tract of land, and further alleging in said answer as follows: "This defendant further alleges that said above-described tract of land is reasonably worth, and that the market value of same is, the sum of $1,500; and, in the event plaintiff foreclosed the lien sought to be foreclosed on said land, this defendant would be then and there damaged in the sum of $1,500, which said sum defendants J. H. Quinn, C. Q. Hassard, and D. A. Padelford, under the terms of said bond above alleged, are in law bound to pay this defendant." And further alleging the placing of said bond in the bank and losing same and praying for $1,500 against said J. H. Quinn, C. Q. Hassard, and D. A. Padelford in the event plaintiff recovered upon said note sued on.

The defendant J. L. May and the witness F. M. May testified, over the objection of these defendants, substantially to the terms of said alleged bond as set out in said pleading. Witness F. M. May for the appellee J. L. May testified that the market value of 45.6 acres of land was $35 per acre. This testimony as to the value of the land in question was all the evidence introduced in the case on that issue; and, upon these pleadings and this evidence, the court submitted to the jury special issues on the measure of damages marked "second." "What is the reasonable cash market value of the. 45.6 acres of land in question in Coleman county, Texas, at this time?" To which the jury answers: "We, the jury, agree that $28 per acre is a reasonable cash value of said land." And the court rendered judgment against the appellants in favor of said J. L. May on this issue as follows: "And it appearing to the court that the said J. L. May should recover against J. H. Quinn, C. Q. Hassard, and D. A. Padelford on his cross-bill herein for the value of 45.6-acre tract of land, to wit, $1,276.80, less the amount of J. L. May note in deed from J. H. Quinn to him of the amount of $726.57, it is therefore ordered, adjudged, and decreed by the court that the plaintiff on his cross-bill, J. L. May, should have and recover from J. H. Quinn, C. Q. Hassard, and D. A. Padelford the sum of $550.13; same being the difference in the value of the May land and the said May note, together with his costs in this behalf expended of which he may have his execu-

tion." The deed from J. H. Quinn to J. L. May, under which he purchased the 45.6 acres in question, recited the payment by May for the land the sum of $300 cash and the execution of a $500 note to be paid on March 16, 1908; deed reciting that said $500 note is deposited with the Coleman National Bank with the understanding that no part thereof shall become due and payable until the land sold is released from all liens retained in the deed from Ellard Mitchell and wife to A. P. Penny. (This lien referred to in the deed from Ellard Mitchell to A. P. Penny is the lien that plaintiffs were seeking to foreclose in the suit for $2,300 note.) The evidence shows that J. L. May entered into possession of this tract of land and has been in possession of same ever since the execution of said deed, which is the 23d day of March, 1906, enjoying the rents and revenues of the same.

The testimony indicated that, after taking possession of the land, May had made improvements upon it. The relative value of improvements and use was not shown. Two main reasons are urged in behalf of Hassard and Padelford for a reversal of this branch of the case, which are, first, that the court erred in permitting May to introduce parol evidence for the purpose of showing that appellants had executed the title bond containing the terms alleged in May's pleading; and, second, that the measure of damage is the amount of purchase money paid by May, with legal interest thereon, and not the value of the land, as held by the trial court.

[1] As to the first question, it is contended that no sufficient predicate was laid for the introduction of parol evidence to prove the contents of the alleged bond. After describing the bond, May alleged, among other things, that he had placed it in the Coleman County National Bank, and that it could not be found; and, in addition to the testimony given by him describing the instrument, he testified that it was lost, and stated that, when he first got it, he put it in the Coleman County National Bank; said he delivered it to Q. V. Henderson, who was then the cashier of that bank, and told him to take care of and keep it, and he said he would do so. He stated that Henderson was dead; that search had been made at the bank; and that he had searched among his own papers, and the instrument could not be found. The witness Dumas testified that he was then cashier of the Coleman County National Bank, and as such had searched for the paper referred to in the bank, but could not find it. It is contended that the proof referred to was insufficient, because it was not shown that search was made among the papers of Q. V. Henderson, to whom the lost paper was delivered. We overrule that objection and hold that the evidence submitted was sufficient proof of inability to produce the lost paper. While it was delivered to Henderson, such delivery was made to him

as an officer and representative of the bank, and he did not receive it in his individual capacity, but received it on behalf of the bank. This shows a delivery to the bank upon an agreement that it was to be kept in the bank, and May was not required to proceed upon the assumption that Henderson or any one else had violated that agreement and removed the paper to some other place.

[2, 3] As to the other point, the holding of the trial court that the measure of damage was not limited to the money paid with interest, but should be determined by the value of the land, is supported by Phillips v. Herndon, 78 Tex. 379, 14 S. W. 857, 22 Am. St. Rep. 59, and Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799. This case is distinguishable from those which seek to recover damages for breach of warranty of title. May sought to recover for the breach of a special contract, providing for the payment of all damages on account of the failure of appellants and their principal to pay off or remove an outstanding vendor's lien; and if, as a result of a breach of that obligation, appellee should lose the land, nothing short of the value thereof at the time of such loss would compensate him for the injury or damage sustained, and fair compensation is the true test of actual damages in all cases. Field v. Munster, 11 Tex. Civ. App. 341, 32 S. W. 417. These appellants have presented other and minor questions; but in the main they are dependent upon one or both of the points just decided. Hence we hold that appellants Hassard and Padelford have shown no reason why the judgment against them should be set aside.

[4] The other appellants, Mrs. E. R. and W. H. Stephens, assign several grounds upon which they contend that the judgment against them in favor of R. Henderson should be reversed. We have reached the conclusion that one of their contentions is correct, and for that reason, and without deciding the other points, the judgment against them will be set aside and judgment rendered in their favor. The point referred to is embraced in their contention that they are entitled to protection as innocent holders of negotiable paper. We copy the following statement from appellants' brief, which is not controverted by the adverse party:

"Ellard Mitchell was the owner of three tracts of land situated in Coleman county, Tex. By deed dated March 16, 1903, he conveyed the same three tracts of land to A. P. Penny; the consideration of said conveyance being cash in the sum of $2,100 and one note in the sum of $2,300, bearing same date with said deed, and due five years after date, bearing interest at 10 per cent. per annum, payable annually, for which said interest five interest coupon notes, numbered from 1 to 5, inclusive, were attached to said note and executed as a part thereof, as coupon notes, said note being payable to the order of Ellard Mitchell. The deed reserved a vendor's lien upon the said three tracts of land to secure the payment of said note; the first tract being 160 acres of land more or less out of survey No. 33 in the name of B. B. B. & C. R. R. Co., described by field notes. The second tract consisted of 45.6 acres out of the Samuel Sprague survey 168 and out of block 13 subdivision of said survey, setting out the field notes thereof. The third tract consisted of 195.4 acres out of the Johann H. A. Shoper survey No. 41, setting out the field notes thereof.

"Ellard Mitchell on the 31st day of August, 1903, by a written transfer, sold, transferred, and conveyed to R. Wilbur Brown the said $2,300 note and coupons, together with the superior title to the land, and in said written transfer guaranteed the payment of the said note and interest coupons to the said R. Wilbur Brown and his assigns. R. Wilbur Brown by a written transfer, bearing date May 8, 1905, transferred and conveyed to John Hassard the said $2,300 note and the interest coupons, together with the superior title to said land. The plaintiffs C. Q. Hassard and W. H. Stephens were duly appointed executors of the estate of John Hassard, deceased, by the county court of Shackelford county, Tex., October 8, 1908, and qualified as such on same date.

"On December 7, 1903, A. P. Penny and wife conveyed to W. S. McDonald the first tract—that is, the 160 acres of land more or less out of survey 33 in the name of B. B. B. & C. R. R. Co.—which deed was duly acknowledged on the same date and filed for record in Coleman county, Tex., August 26, 1904, at 2 o'clock p. m., and recorded August 27, 1904, at 3 o'clock p. m.; the said deed reserving a vendor's lien on the tract of land conveyed to secure nine certain promissory notes as unpaid purchase money. The deed recites, among other things, the following: 'That we, A. P. Penny and wife, M. L. Penny, of the county of Coleman and state of Texas, for and in consideration of the sum of $2,000 to us paid and secured to be paid by W. S. McDonald, as follows: $200 cash in hand paid, the receipt of which is hereby acknowledged, and the further consideration of the nine certain promissory notes of even date herewith, each for the sum of $200, and payable to the order of A. P. Penny on or before December 1, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911, 1912, respectively, bearing interest at ten per cent. per annum payable annually, and signed by W. S. McDonald, have granted, sold and conveyed, and do by these presents grant, sell and convey unto the said W. S. McDonald.' The deed then describes the 160 acres of land by field notes, and after the field notes the following statement is made in said deed: 'It is further agreed that the principal and interest of notes herein described are to be credited when paid upon one certain promissory note now amounting to the sum of $2,000 given by the said A. P. Penny to Ellard

Mitchell on March 16, 1903, and transferred by said Mitchell to R. Wilbur Brown until the said R. Wilbur Brown or his assigns release said indebtedness, then the notes this day given are to be paid to the said A. P. Penny or his assigns.' The deed then has the ordinary clauses of warranty and reserving a vendor's lien to secure the notes.

"By deed dated August 26, 1904, W. S. McDonald and wife conveys the said 160 acres of land to appellee R. Henderson; the deed reciting as a consideration for said conveyance as follows: 'For and in consideration of the sum of $2,000 to us paid and secured to be paid by R. Henderson as follows: $200 cash, receipt of which is hereby acknowledged, 'and the further consideration of said R. Henderson assumes and agrees to pay off nine certain notes signed by W. S. McDonald, payable to A. P. Penny, each dated December 7, 1903, each for the sum of $200, and payable on or before December 1, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911, 1912, respectively, bearing interest at ten per cent. per annum, and which are vendor's lien notes upon the below described land. Have granted sold and conveyed and by these presents grant, sell and convey unto the said R. Henderson of the county of Coleman, state of Texas, all that certain 160 acres of land, more or less out of survey 33.' The deed then describes the land as in the deed to McDonald. After this description the following clause is in said deed: 'It is further agreed that the principal and interest of notes herein described are to be credited when paid upon one certain promissory note amounting to the sum of $2,000 given by the said A. P. Penny to Ellard Mitchell on March 16, 1903, and transferred by said Mitchell to R. Wilbur Brown, until the said R. Wilbur Brown or his assigns release said indebtedness, then the notes this day given are to be paid the said A. P. Penny or his assigns.' The deed then contains the general covenant of warranty and reservation of the vendor's lien. Filed for record September 1, 1904, and recorded September 2, 1904.

"The defendant R. Henderson offered in evidence three negotiable promissory notes, each of said notes being for the sum of $200, each dated December 1, 1903, each note signed by W. S. McDonald, and each payable to A. P. Penny or order, with interest from date until paid at 10 per cent. per annum, interest payable annually as it accrues; said notes being Nos. 5, 6, and 7; note No. 5 on its face stating that it was payable on or before December 1, 1908, No. 6 on or before December 1, 1909, No. 7 on or before December 1, 1910. The defendant R. Henderson testified, with reference to these three notes that he had paid off, as follows: 'I paid off some notes on the land to Mr. Stephens. I paid him three notes of $200 each, with interest, made by McDonald to Penny. I am now the owner of these notes shown you. I received all of these notes at the First Na-

tional Bank and one of them from Mr. Stephens himself. I was paying these notes to W. H. Stephens. He was holding them against me. I paid something over $700 on those three notes. The first payment on same that I made was in December, 1908. I don't remember the date of the month. I paid him $300 at that time on these notes. He did not inform me at that time that he held this other note. About February, 1909, I took up another one of these notes and paid $205. In December, 1909, I paid Mr. Stephens $60 interest on three notes. In April, 1909, I took up a note from him and paid him $207. He never informed me at any of those times that he held this $2,300 note. This deed is made to me, and I owned the land described in it.' He testified further: 'I knew about the note of A. P. Penny to Ellard Mitchell at the time I bought the land. At the time I paid these three notes to Mr. Stephens he claimed to own the notes and demanded payment of 'them, and I paid him that way. He surrendered the notes to me when I paid them off. These three notes that have been offered in evidence are the ones that I paid.' 'When I paid Mr. Stephens this money I demanded that he apply it on these three notes, and he surrendered me the notes. That is what I was paying it for. I don't know that I demanded that he apply that money to the payment of these three notes in those words, but when I paid the money I got the notes. I had assumed these notes, and I intended to pay them off. He received the money stipulated in Nos. 5, 6, and 7, and surrendered the notes to me. I did not make any demand of him that he apply this money any further than to the payment of these three notes. I had no right to make any demand. When I turned over the money to him, it was his, and I made no demand as to how he should handle the money. In the deed from McDonald and wife to me, I assumed the payment of nine notes of the same series as these three I have been testifying about. I have all these notes in my possession except Nos. 8 and 9, and all that I have show to be paid off and discharged. These are the notes that are mentioned in the deed from Penny to McDonald and known as the McDonald notes to Penny.'

"May 19, 1905, A. P. Penny sold the nine $200 notes executed by W. S. McDonald and payable to A. P. Penny or order (referred to in the deed from Penny to W. S. McDonald) to J. H. Quinn. August 1, 1908, J. H. Quinn sold five of the negotiable vendor's lien notes executed by McDonald to Penny referred to in the deed from Penny to McDonald; said five notes maturing on or before December 1, 1908, 1909, 1910, 1911, and 1912, respectively, to Joe Toland. On August 5, 1908, Joe Toland sold the said five $200 notes executed by McDonald to Penny payable on or before December 1, 1908, 1909, 1910, 1911, and 1912, respectively to W. H. Stephens. W. H. Ste-

phens on September 9, 1908, sold the said five notes to Mrs. E. R. Stephens. W. H. Stephens introduced in evidence two $200 notes Nos. 8 and 9 payable to A. P. Penny or order, and signed by W. S. McDonald, payable on or before December 1, 1911, 1912; both of same being duly indorsed by Mrs. E. R. Stephens to the said W. H. Stephens without recourse on her. W. H. Stephens testified: 'I owned these notes at the time I turned them over to Walter C. Woodward for collection, and own them now. I had an agreement with him that he was to have the 10 per cent. attorney's fees mentioned in the notes. I have had experience in handling notes and foreclosing liens, and that is a reasonable and customary attorney's fee for such work. It is not a fact that the indorsement on these notes, "Pay to the order of W. H. Stephens without recourse on me, E. R. Stephens," was put on there after I sued on these notes. I don't know what my attorneys put in at first about those notes, but I told them that she had owned the notes, and that I had taken them back. I couldn't say what my pleadings state in regard to those notes, but that indorsement was put on there before suit was filed on them. I have seen these three notes. They were paid to me either personally or as agent for my mother. The money was received by me as agent for my mother. I would have to look up my copy book to find out whether I notified Mr. Henderson that I held these notes myself or as agent for my mother, but I believe I notified him that I was acting as agent for my mother. I wrote this letter. This letter doesn't state that I was acting for my mother. It states, "Your favor of the 4th inst. to hand one of your notes was due the 1st inst.," and the date of the letter is December 7, 1908, and it is addressed to Mr. R. Henderson, box 23, R. F. D. No. 1, Talpa, Texas: "Your favor of the 4th inst. to hand one of your notes was due the first inst. $200, and interest $15; I sent out notice of this a month ago, but you apparently did not receive it; I am sending the note due to the First National Bank of Coleman, and when they notify me of its payment and interest on the other notes, will make them interest paid to December 1, 1908." That is my signature. I believe Mr. Henderson paid three times on these notes, but I would have to look at my books to be sure. One of the payments was somewhere about May, 1910. He paid me all the interest that was due on these notes up to the time they were paid, and the interest on the other notes as shown. As far as I know, the dates these notes are marked paid are correct. The First National Bank marked two of them paid, and I believe that is correct, but of course I couldn't say because they were paid through them. The indorsement of "paid" on No. 7 is correct. I put them on these. I received the money on these notes that were paid through the bank. I

was one of the executors of the estate of John Hassard, deceased, at the time I was receiving this money, and I had the A. P. Penny note that is sued on in my possession all the time. I didn't notify Mr. Henderson that I had that note. I didn't know that he had any connection with it at all. I handle a good many notes, and I have a system for handling them. Sometimes I keep myself posted concerning the tracts of land I have liens on, but it is not a fact that I do all the time. I wouldn't necessarily know if I got two notes on the same tract of land, without something called by attention to it. It is probable that I would know, but I don't know it in this case. I can read and know the name of a survey when I see it. At the time this money was collected for my mother, she was claiming these notes as her property, and, after I bought the notes, then I claimed them as my property. I paid face value for the notes when I purchased them from Toland, and, when I took them up from my mother last winter, I paid her face value for them. She paid me face value for them when she bought them from me. At the time I bought these notes, I didn't know anything about the recitations in the deed from Penny to McDonald. I learned about the recitations in the deed from Penny to McDonald about the 1st of November, 1910. I spoke to Mr. Henderson about that, and he said he didn't know anything about it. I spoke to Mr. Henderson about the fact that the money he was paying was to be paid on the other note; that was in November last year, about the time this suit was filed. Mr. Henderson told me that he did not know about the provision of his notes that he was paying me was to be paid on the other note, and that he did not know anything about the other note. At the time that I intervened in this suit on these two notes, there was a lot of past-due interest on No. 9. I exercised my option to declare the note due, and had the suit filed afterwards. I don't think I told Mr. Henderson that this Penny note of $2,300 was a lien on his land. I bought the last five of the McDonald series of notes on August 5, 1908. None of them were due at that time. The Penny note fell due March, 1908.'

"R. Henderson, being recalled, testified: 'On December 1, 1908, I paid Mr. Stephens a note of $200, and interest on five notes made $300. In February, 1909, I paid off one note with accrued interest of $205 as my recollection. In December, 1909, I paid $60 to Mr. Stephens; in April, 1910, I paid the $200 and about $7 interest.' The court rendered a judgment in favor of R. Henderson upon his evidence on November 30, 1911. That part of judgment is as follows: 'It is further ordered, adjudged, and decreed by the court that R. Henderson do have and recover of and from W. H. Stephens and Mrs. E. R. Stephens the sum of $963.89, with interest thereon from this date at the rate of 6 per

cent. per annum and costs of suit, for which he may have his execution under conditions herein stated. It is further adjudged and decreed by the court that, in the event the tracts of land in this judgment ordered to be sold before the R. Henderson tract of land, to wit, the first tract described in plaintiffs' judgment in satisfaction of plaintiffs' judgment be sufficient to satisfy plaintiffs' said judgment, to wit, the judgment of plaintiffs C. Q. Hassard and W. H. Stephens, executors of the estate of John Hassard, deceased, then the tract of land owned by the defendant R. Henderson and described in said judgment as first tract shall not be subjected to sale in satisfaction of any part of said judgment so recovered by plaintiffs, then and in that event the judgment here rendered in favor of said Henderson shall be deemed to be fully satisfied and paid off. But, in the event the tract of land ordered to be sold before the R. Henderson tract of land shall be insufficient to pay off and satisfy the judgment rendered in favor of plaintiffs, then and in that event R. Henderson is to have his execution against the said W. H. Stephens and Mrs. E. R. Stephens for any sum of money that may be sought to be made out of the R. Henderson tract of land described as first tract, not to exceed the amount of the said $963.89 decreed herein, for which he may have his execution.'"

Appellee Henderson recovered judgment against the appellants upon the theory that, when he paid to them the money due upon the McDonald notes then held by them, they were required by the stipulation in the deed conveying the land to apply the money so paid to the payment pro tanto of the note and the lien upon which the plaintiffs sued and recovered judgment. The uncontroverted proof shows that appellants acquired the McDonald notes before maturity, paid value therefor, and had no actual notice of the stipulation referred to in the deeds conveying the land, for the purchase money of which the notes were given; and we presume that the trial court held that the deeds referred to were of record in the proper county at the time appellants purchased the notes, and, as each note referred to the deed, appellants were charged with constructive notice of the stipulation in the deeds requiring the money paid on the notes to be applied to the payment of the note sued on by the plaintiffs in this case. In that ruling we are constrained to hold that the trial court committed error. The notes referred to contained absolute and unconditional promises to pay a specified sum of money, and possessed all the other elements necessary to constitute what is denominated in the books negotiable instruments or commercial paper; and being such instruments, if appellants purchased them in good faith before maturity, and for a valuable consideration, they are protected as innocent purchasers, unless they had actual knowledge or notice of the stipulation referred to in the deeds referred to. That question was thoroughly considered and discussed by this court in Buchanan v. Wren, 10 Tex. Civ. App. 560, 30 S. W. 1077, which decision was approved by the Supreme Court, and it is not deemed necessary to discuss the question further.

The reference in each note to the deed was for the purpose of description only, as shown by the language used; and such reference did not make the deed, or the contract embodied in the deed, any part of the notes, and therefore appellants rested under no obligation to ascertain the contents of the deed before purchasing the notes.

For the reasons above stated, the judgment in favor of R. Henderson against Mrs. E. R. Stephens and W. H. Stephens is reversed and judgment here rendered to the effect that R. Henderson take nothing as against Mr. and Mrs. Stephens, and that R. Henderson pay one half the costs of this appeal. In all other respects the judgment of the court below is affirmed, and the other half of the costs of appeal is taxed against the appellants C. Q. Hassard and D. A. Padelford.

Affirmed in part, and in part reversed and rendered.