LUBBOCK STATE BANK et al. v. H. O.
WOOTEN GROCERY CO. et al.
(No. 8215.)

(Court of Civil Appeals of Texas. Ft. Worth.
June 5, 1915. Rehearing Denied
Oct. 16, 1915.)

1. VENDOR AND PURCHASER ☞261 — BONA
FIDE PURCHASER—CONSTRUCTIVE NOTICE.

Purchasers for value and without actual
notice of previous transfers of vendor's lien
notes are, as against unrecorded transfers of
such notes, bound only by their actual knowl-
edge or notice appearing from the records.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 674–686, 688–695;
Dec. Dig. ☞261.]

2. VENDOR AND PURCHASER ☞261—VALIDI-
TY—ISSUANCE.

Where a purchaser, who had given vendor's
lien notes in payment, retransferred the land
on condition that she should be discharged from
payment of such notes, and the vendor retained
the notes, the notes are on reissue thereafter
valid as against the vendor.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 674–686, 688–695;
Dec. Dig. ☞261.]

3. VENDOR AND PURCHASER ☞261 — BONA
FIDE PURCHASER—NOTICE.

A vendor of land, who received in payment
10 vendor's lien notes, transferred notes 2, 3,
and 4 without executing any instrument in
writing, and no written evidence of such trans-
fers was recorded. Thereafter the vendee, be-
ing unable to meet the notes, retransferred the
land on consideration that the vendor should
assume and become liable to pay all debts and
obligations against it. Subsequently by written
agreement duly recorded notes 1 and 5 of the
vendor's lien notes were disposed of to another.
Thereafter the property was again sold, the
vendor receiving 10 other vendor's lien notes.
By this conveyance, which was not recorded, the
grantee assumed payment of all outstanding in-
debtedness. The husband of the vendor trans-
ferred the last series of notes to plaintiffs in
error, assuring them that the land was subject
to no other lien except that of notes 1 and 5.
The conveyance of notes 1 and 5 recited that
the last 5 of that series had been fully paid,
and that the second, third, and fourth notes
should be an inferior lien to 1 and 5. Held,
that the holder of the last series of vendor's lien
notes had a lien superior to that of the holder
of notes 2, 3, and 4 of the first series; there
being nothing in the record to give construc-
tive notice, and there being nothing to cast sus-
picion on the statement of the husband.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 674–686, 688–695;
Dec. Dig. ☞261.]

4. VENDOR AND PURCHASER ☞261—REGIS-
TRATION STATUTES.

As the purchase of a vendor's lien note car-
ries with it as an incident the lien, and the
latter is within the registration statutes, one
desirous of protecting his lien should secure a
written assignment and record it.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 674–686, 688–695;
Dec. Dig. ☞261.]

Error from District Court, Taylor County;
Thomas L. Blanton, Judge.

Action between the Lubbock State Bank
and others and the H. O. Wooten Grocery
Company and others. There was a judgment
for the latter, and the former bring error.

Affirmed in part, and in part reversed and
rendered.

Sayles, Sayles & Sayles, of Abilene, and
Benson & Spencer, of Lubbock, for plaintiffs
in error. Kirby, Scarborough & Davidson
and H. A. Tillett, all of Abilene, for defend-
ants in error.

CONNER, C. J. This contest involves the
relative value of certain vendor's lien notes,
each party claiming priority of liens upon
the N. W. ¼ of section 14, Lunatic Asylum
land situated in Taylor county, Tex.     The
contest arises out of the following state of
facts, as shown by the trial court's conclu-
sions and by an agreed statement found in
the record, viz.:   On August 11, 1910, the
quarter section of land mentioned was owned
in the separate right of Mrs. May Braddy.
She on that day, joined by her husband, M.
T. Braddy, conveyed the land to Eliza Gregg,
for which Mrs. Gregg executed her 10 promis-
sory notes, numbered from 1 to 10, respective-
ly, for $640 each and payable yearly after
November 1, 1910. · The deed reserved the
vendor's lien to secure the payment of the
notes, and it was recorded on the 27th day of
August, 1910.   In September following this
conveyance, Mrs. Braddy transferred notes
2, 3, and 4 of the above series to certain
of the defendants in error to secure certain
indebtedness on the part of Mrs. Braddy due
them, respectively. These transfers were not
evidenced by any instrument in writing, nor
was any written evidence of these several
transfers ever recorded. After this, to wit,
on the 24th day of November, 1911, Eliza
Gregg reconveyed the quarter section of land
in question to May Braddy for a recited
cash consideration of $100, and the further
consideration that May Braddy "assume and
become liable to pay all debts and obligations
that may be held against" the land.   This
deed of reconveyance further recited that the
land was reconveyed "because of grantor's
inability to pay the outstanding notes against
the land." This deed was duly recorded on
November 25, 1911.   Thereafter, to wit, on
February 12, 1912, as we must find from the
court's specific finding and the agreed state-
ment, M. T. and May Braddy executed a
written transfer to Simmons College of notes
1 and 5 constituting a part of the series of
notes executed by Mrs. Gregg. The transfer
refers to the 10 notes executed by Mrs. Gregg
as shown in the deed to her, recites that the
last 5 of the series "have been fully paid,"
and "are fully canceled and released," and
that "the second, third, and fourth    *   *   *
for full value in hand paid  *   *   *   are
hereby made a second and inferior lien to the
two notes   *   *   *   assigned,  *   *   *   and
said second lien notes are so indorsed." This
written assignment was duly recorded on
February 13, 1912.   Thereafter, on January
15, 1913, May Braddy, joined by her husband,

M. T. Braddy, conveyed the quarter section of land mentioned to W. F. Braddy, who gave therefor his 10 promissory notes, numbered from 1 to 10, respectively, for $350 each, and "assumed the payment of all outstanding indebtedness." This deed was never recorded. The notes of this series which also reserved a lien on the land mentioned were made payable to M. T. Braddy, and he thereafter, before maturity and for a valuable consideration, conveyed all of the series to the respective plaintiffs in error. To each of plaintiffs in error to whom the series were so successively transferred, M. T. Braddy personally represented at the time of the transfer that the notes of the series "were the only liens against said land (the quarter section hereinbefore mentioned) except $1,300 due Simmons College." It was further agreed, and the court so finds, that none of the holders of this series in fact examined the records of Taylor county, and that "except for such notice, if any, as may have been given by the records of Taylor county and deed to W. F. Braddy," they are each "bona fide holders in good faith for value."

On the above state of facts, the court concluded as a matter of law that the notes held by Simmons College constituted a first lien upon the quarter section of land in question, and that notes 2, 3, and 4 of the Gregg series of notes owned by defendants in error constituted a second lien, and that the notes given by W. F. Braddy as hereinbefore mentioned and owned by plaintiffs in error constituted the third lien. Judgment was rendered in accordance with the conclusion so stated, and the owners and holders of the second series of vendor's lien notes executed by W. F. Braddy have sued out this writ of error against the owners and holders of notes 1, 2, 3, and 4 of the first series executed by Mrs. Gregg.

All parties agreed that Simmons College is entitled to priority of lien, and that the judgment in favor of Simmons College to that effect is correct. The real contest is between the owners of notes 2, 3, and 4 of the Gregg series, and the owners of the second series of notes given by W. F. Braddy. As to these notes we think the court erred in his conclusion of law, and that the plaintiffs in error, as owners of the W. F. Braddy series of notes, are entitled to priority over the defendants in error, who are owners, as stated, of notes 2, 3, and 4 of the Gregg series.

[1-3] It must be admitted, we think, that the plaintiffs in error, as purchasers of the W. F. Braddy notes before maturity and for value, are entitled to a priority of lien claimed by them as against the unrecorded lien of defendants in error, unless, as the court below evidently concluded, the records of Taylor county were sufficient to give plaintiffs in error notice of the liens claimed by defendants in error. See Henderson v. Pilgrim, 22 Tex. 464, and cases hereinafter cited. The doctrine of constructive notice, which is the reliance of defendants in error in the present case, is said to be a harsh one arising out of motives of public policy in the enactment of our registration statutes. See Call v. Hastings, 3 Cal. 179, and Vizzard v. Taylor, 97 Ind. 90. By the application of the doctrine of constructive notice it often happens that great injury is brought about to a purchaser of lands, mortgages, or other property, whose actual good faith cannot be questioned. No sympathy, however, is to be extended to a purchaser who is plainly notified by the proper record of an opposing claim. The law imposes upon him the duty of examining the records whether he actually does so or not, and a failure to examine the records, and to thus receive actual notice of the opposing claim or right, is his own fault, and it may be well said that he deservedly sustains any loss that results. Ordinarily, too, the doctrine has been so extended as that actual knowledge on the part of a subsequent purchaser of facts sufficient to put a prudent person on inquiry will affect him with notice of all that the inquiry would have developed. But regardless of the question as to how far, if at all, the principle last mentioned can be made to apply in this case, it is apparent that no knowledge of any character other than as must be imputed to plaintiffs in error from the records of Taylor county was shown. On the contrary, plaintiffs in error were expressly assured by M. T. Braddy that the only prior lien was the one in favor of Simmons College. Nothing appears to cast suspicion upon this statement. He was husband and agent of the wife in the transfer of the notes and a grantor in the deed to the maker. We find nothing to suggest that plaintiffs in error were guilty of bad faith in failing to inquire of May Braddy, the wife, or that an inquiry from her would have resulted in information conflicting with the husband's statement. Mere carelessness in this respect will not amount to bad faith in the absence of cause for suspicion. Larzelere v. Starkweather, 38 Mich. 96.

Indeed, it is admitted, as well as expressly found by the court, that plaintiffs in error were bona fide purchasers for value and without notice of the claims of the defendants in error, who own notes 2, 3, and 4 of the Gregg series, "except such notice, if any, as may have been given by the records of Taylor county and deed to W. F. Braddy." The only recitation in the W. F. Braddy deed relied upon, or that can be relied upon, to show notice that notes 2, 3, and 4 of the Gregg series were outstanding, is the recitation that W. F. Braddy "assumed the payment of all outstanding indebtedness." This would very naturally be referred by each several purchaser of the W. F. Braddy notes to notes 1 and 5 of the Gregg series held by Simmons College. This is especially true in view of M. T. Braddy's assurance, to the ef-

fect that these latter notes were the only ones that were outstanding. The records of Taylor county exhibited but little, if anything, more forceful in the way of notice. There was no transfer of notes 2, 3, and 4 of record, and no recitation in any deed through which plaintiffs in error claimed requiring such conclusion.

It is insisted that May Braddy's assumption of all outstanding indebtedness in the deed of reconveyance by Mrs. Gregg so requires. But not so. The deed does not declare that the Gregg notes have been conveyed. The notes were "outstanding" as to Mrs. Gregg. None of them, so far as the record shows, were then surrendered and delivered up to Mrs. Gregg, and the "assumption" was entirely consistent with the idea that Mrs. Gregg so required, in view of their nondelivery to her, as a protection to a subsequent circulation of her notes, or as formal assurance that they were yet in possession of May Braddy. It is insisted that it is unreasonable to infer that Mrs. Braddy would "assume" the payment of notes still held by her. But it is to be borne in mind that she did do so as to at least part of the notes, for it is not pretended that notes 6, 7, 8, 9, and 10 of the Gregg series ever passed out of Mrs. Braddy's hands, and the argument based on the assumption of Mrs. Braddy applies to all notes of this series alike. Indeed, it is not an unreasonable inference that at the time of the reconveyance Mrs. Braddy held and retained all of the Gregg notes, with the knowledge or consent of Mrs. Gregg, either because they were not at the time readily obtainable for surrender or immediate destruction, or with a possible view on Mrs. Braddy's part of a subsequent transfer in the nature of a reissuance of the notes which she could lawfully do and which would be effective in the hands of a purchaser as against the land and Mrs. Braddy at least. See 2 Daniel on Negotiable Instruments, § 1233. This appears in fact to have been done as to part of the notes, for the assignment of notes 1 and 5 to Simmons College was on February 12, 1912, following the reconveyance of Mrs. Gregg on November 24, 1911. In defendants in error's brief before us it is argued that this transfer took place on February 5, 1911. While the written transfer to Simmons College as it appears in the statement of facts bears this date immediately above the signature of M. T. Braddy and May Braddy the acknowledgment bears the date of February 12, 1912, and its record was on February 13, 1912. The formal agreement of the parties hereto, as found in the record, is that:

"Thereafter (viz., after the reconveyance by Mrs. Gregg on November 25, 1911) on the 5th day of February, 1912, M. T. Braddy and May Braddy executed the following instrument to Simmons College."

The instrument is then set out. The court's finding on this subject is "that on the 5th day of February, 1912, M. T. Braddy and wife, May Braddy, executed the following instrument to Simmons College," and this finding is not questioned by any assignment of error. So that it must be held that the transfer to Simmons College did not precede, but was subsequent to, Mrs. Gregg's reconveyance. But to close the subject we conclude that the inferences to be drawn from the mere assumption of Mrs. Braddy in the reconveyance to her are far too inconclusive to amount to notice to the subsequent purchaser of the W. F. Braddy notes that notes 2, 3, and 4 of the Gregg series had been assigned, notwithstanding M. T. Braddy's assurances of contrary effect.

The only other recitations relied upon as constituting the necessary notice are those found in the transfer to Simmons College. To repeat, this instrument contains no declaration that notes 2, 3, and 4 of the Gregg series had been "conveyed," at any time or to any person. It merely recited that the last five notes of the series had been "fully paid" and canceled, and that "the second, third, and fourth, for full value in hand paid, * * * are hereby made a second and inferior lien to the two notes * * * assigned, * * * and said second lien notes are so indorsed." None of these recitations are necessarily inconsistent with the conclusion that all of the series were actually held by and subject to the control of May Braddy. If so, she could, as an inducement to the sale of notes 1 and 5, cancel the last five of the series and postpone the lien of notes 2, 3, and 4 to that of Simmons College. The recitations favor, rather than otherwise, the conclusions that Mrs. Braddy held and controlled all of the notes at the time. She purported to deal with them all as the owner. She sold two. She in effect canceled five, and constituted three a second lien. This she certainly had no right to do if notes 2, 3, and 4 had been conveyed and held by others. It is significant, too, that the terms used relating to notes 2, 3, and 4 are used in the present tense. They are not that the notes had been made "second and inferior liens" and had been "so indorsed," but that they "are hereby" so made, and that they "are so indorsed." As if to render the view of the recitations here presented at least forceful, we find, as shown in the statement of facts and nowhere questioned, the following indorsement on note 4 of the Gregg series, viz., "This note is hereby made a second lien on the land herein described this February 5, 1912." Signed at right angle with the indorsement is the name, "May Braddy." Note No. 3 has the same signature and indorsement, except that the date is given as "February 5, 1911," the indorsement on note No. 2 is dated "February 5, 1912," but the name of May Braddy does not appear to have been signed.

In the respects pointed out this case is to be distinguished from that of Waggoner v. Dodson, 96 Tex. 415, 73 S. W. 517, so urgent-

ly relied upon by defendants in error. In that case there was an unequivocal recitation that the grantor in the deed, under whom the defendant was claiming as an innocent purchaser without notice of an unrecorded deed to another, had theretofore conveyed the land, and the Supreme Court held that such recitation was distinct notice that the title was not in the grantor under consideration, and that he therefore could convey none. Here, there was no recitation of a conveyance of notes 2, 3, and 4 of the Gregg series; such conclusions can only be reached by inferences of uncertain, shifting character. The rule without doubt is that purchasers for value and without actual notice of previous transfer who have not examined the record are only affected by construction with notice of such facts as appear upon the record. As to them no duty of inquiry beyond this exists, unless the recitations of the record are such as to plainly impose the duty. See Adams v. West Lumber Co., 162 S. W. 974, writ of error denied 165 S. W. xv; First Nat. Bank of Aubrey v. Chapman, 164 S. W. 900; Hassard v. May, 152 S. W. 665; Drumm Comm. Co. v. Core, 47 Tex. Civ. App. 216, 105 S. W. 843; Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54; Southern Bldg. & Loan Ass'n v. Brackett, 91 Tex. 44, 40 S. W. 719; Buchanan v. Wren, 10 Tex. Civ. App. 560, 30 S. W. 1077; Turner v. Grobe, 44 S. W. 898; Rotan v. Maedgen, 24 Tex. Civ. App. 558, 59 S. W. 585; Racouillat v. Rene, 32 Cal. 450. It was held by this court in Bank v. Chapman, supra, following Wilson v. Denton, 82 Tex. 535, 18 S. W. 620, 27 Am. St. Rep. 908, that the ordinary rule of constructive notice, such as putting a purchaser upon inquiry, has no application to a purchaser of negotiable paper for value before maturity. In such cases the question is one of bona or mala fides only. If in such cases the purchaser is without notice of facts sufficient to show bad faith on his part, he takes the paper free from any and all undisclosed defenses arising subsequent to the notes' execution. The right here insisted by defendants in error is to satisfy their notes out of the land in question to the entire exclusion of plaintiffs in error, if need be, thus, to that extent, seeking to strip the notes held by plaintiffs in error of all or a material part of their value. In this respect the effect and nature of the defense or right asserted is the same as if the attack was directly upon the notes given by W. F. Braddy and purchased by plaintiffs in error.

[4] It was distinctly held in Henderson v. Pilgrim, 22 Tex. 464, and reaffirmed in Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, that the purchase of a vendor's note carries with it, as an incident, the lien, and that the latter is within our registration statutes. It was said of the note and parties under consideration in the latter case:

"It was within the power of the plaintiff to have taken a written assignment of the vendor's lien, and to have placed it upon record as the law required, and thus to have secured himself against the acts of the original owner of the lien. The land and mortgage company had no such opportunity for guarding against the wrong; and it must be held that he who neglects the performance of a duty enjoined, or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in a position to secure that protection."

These observations apply with very potent effect to the case now before us. Defendants in error had it in their power to require written transfers to them and to have had such transfers recorded. Had they done so, they would have given an unmistakable notice to all the world that they were the owners of and claiming the lien they now assert, and thus have rendered legally impossible any injury by reason of fraud on the part of May Braddy, or of her agent, M. T. Braddy, in representing that no such lien existed. But, not having done this as it was their legal duty to do, we cannot, on the one hand, in their behalf indulge mere inferences of unsatisfactory character to supply what should have been otherwise plainly shown, and, on the other hand, require of plaintiffs in error the acceptance of doubtful warnings which should have formally and certainly appeared upon the public records.

We conclude that the judgment in favor of Simmons College should not be disturbed, but that, as to plaintiffs and defendants in error, the judgment should be reversed, and judgment here rendered for the plaintiffs in error establishing the priority of their liens over the lien of defendants in error. Judgment is rendered accordingly.