H. O. WOOTEN GROCER CO. et al. v. LUBBOCK STATE BANK et al.
(No. 88-2897.)

(Commission of Appeals of Texas, Section A. Nov. 12, 1919.)

1. VENDOR AND PURCHASER &#8658;261(4)—BUYERS OF NOTES WITH NOTICE OF OUTSTANDING LIEN NOTES NOT INNOCENT PURCHASERS.

Where a deed expressly reserving lien to secure the series of notes executed by the purchaser grantee was duly recorded, third persons were charged by the record with notice of the lien on the land so created, and, in buying a second series of vendor's lien notes from the husband of the original grantor and vendor after a reconveyance to and resale by her, they took subject to the lien of the outstanding first purchase-money notes, and recitals in the recorded deed of reconveyance from the purchaser grantee to the grantor, in a recorded transfer of part of the notes to a college, and in the recorded deed to the subsequent purchaser, were material only in determining their effect on the notice from record of the original deed, and, not being tantamount to a declaration of payment of the notes and release or extinguishment of the lien, the fact that transfers of part of the first series of notes were not recorded was immaterial.

2. VENDOR AND PURCHASER &#8658;261(3)—RECORD OF ASSIGNMENT OF NOTE BY TRANSFEREE.

The purchase of a vendor's lien note carries with it the lien, and the transferee of such a note can take a written assignment and place it of record, thus securing himself against wrongful release by the original owner.

3. VENDOR AND PURCHASER &#8658;261(4)—VENDOR'S LIEN NOTES; RECITALS IN DEED OF RECONVEYANCE NOT DECLARATIONS OF PAYMENT.

Recitals in deed of reconveyance from the purchaser of land to the seller *held* not to be construed as declarations of payment, satisfaction, or cancellation of the vendor's lien notes and release or extinguishment of the lien, so as to entitle purchaser of subsequent series of vendor's lien notes to regard the first vendor's lien notes as satisfied.

---

&#8658;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. VENDOR AND PURCHASER 266(3)—VENDOR'S LIEN; NO EXTINGUISHMENT BY MERGER FROM RECONVEYANCE.**

Where land was sold, and vendor's lien notes given for the price, and the vendor transferred three of the notes to a third person, the reconveyance of the land by the buyer to the vendor did not effect a merger extinguishing the vendor's lien.

**5. VENDOR AND PURCHASER 261(4)—VENDOR'S LIEN NOTES; INQUIRY BY PURCHASERS OF SECOND SERIES.**

Purchasers of second series of vendor's lien notes resulting from resale of land after reconveyance to the seller *held* chargeable with duty to inquire as to the ownership of the whole or part of the first series of vendor's lien notes resulting from the first sale, notwithstanding a declaration, in a transfer of part of the first series of notes, of the creation of second lien to secure other notes of the first series, though giving rise to a dubious inference they were then owned by the seller; the inference not being sufficiently cogent to be tantamount to a payment of the notes and release or extinguishment of the lien, particularly in view of the assumption of the indebtedness by the seller in the deed of reconveyance.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action between the Lubbock State Bank and others and the H. O. Wooten Grocer Company and others. To review judgment for the latter, the former brought error to the Court of Civil Appeals, which affirmed in part and in part reversed and rendered (179 S. W. 1141), and the H. O. Wooten Grocer Company and others bring error. Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed, on recommendation of the Commission of Appeals.

Scarborough & Davidson, of Abilene, for plaintiffs in error.

Benson & Spencer, of Lubbock, and Sayles, Sayles & Sayles, of Abilene, for defendants in error.

SONFIELD, P. J. This suit involves a determination of the priority of liens between two series of vendor's lien notes on the northwest quarter of section 14, lunatic asylum land, situate in Taylor county, upon the following state of facts as found by the trial court and the Court of Civil Appeals:

The quarter section of land above mentioned was on August 11, 1910, the separate property of May Braddy, wife of M. T. Braddy. On that day Mrs. Braddy, joined by her husband, conveyed the land to Eliza Gregg, the grantee executing her ten promissory notes, numbered from 1 to 10, respectively, for $640 each, and payable yearly after November 1, 1910. The deed expressly reserved the 'vendor's lien to secure the payment of the notes, and same was duly recorded on the 27th day of August, 1910.

In September, 1910, Mrs. Braddy for a valuable consideration transferred notes 2, 3, and 4 of the above series to certain of the plaintiffs in error. The transfers were not evidenced by any instrument in writing, nor was any written evidence of the several transfers ever recorded.

Subsequently, on the 24th day of November, 1911, Eliza Gregg reconveyed the quarter section of land to May Braddy for a recited cash consideration of $100 and the further consideration that May Braddy "assume and become liable to pay all debts and obligations that may be held against" the land. The deed further recited that reconveyance was made "because of grantor's inability to pay the outstanding notes against the land." This deed was duly recorded on the 25th day of November, 1911.

In February, 1912, and subsequent to the deed of reconveyance, May Braddy and her husband executed a written transfer to Simmons College of notes 1 and 5 of the series of notes executed by Mrs. Gregg. The transfer refers to the ten notes executed by Mrs. Gregg as shown in the deed to her, and recites that the last five notes of the series "have been fully paid," and "are fully canceled and released," and that the "second, third, and fourth * * * for full value in hand paid * * * are hereby made a second and inferior lien to the two notes * * * assigned, * * * and said second lien notes are so indorsed." This instrument was duly recorded on the 13th day of February, 1912.

On the 15th day of January, 1913, May Braddy, joined by her husband, M. T. Braddy, conveyed the quarter section of land to W. F. Braddy, who executed therefor his ten promissory notes numbered from 1 to 10, respectively, for $350 each, and "assumed the payment of all outstanding indebtedness." The deed reserved a lien to secure this series of notes, and was never recorded. The notes executed by W. F. Braddy were made payable to M. T. Braddy, and he thereafter before maturity and for a valuable consideration conveyed all the series to the respective defendants in error.

It was agreed between the parties, and the Court of Civil Appeals so finds that none of the defendants in error in fact examined the records of Taylor county, and that "except for such notice, if any, as may have been given by the records of Taylor county and deed to W. F. Braddy," they are each "bona fide holders in good faith for value."

The trial court concluded that the notes held by Simmons College constituted a first lien upon the land; that notes numbered 2, 3, and 4 of the Gregg series, owned by plaintiffs in error, constituted a second lien; and that the notes executed by W. F. Braddy and owned by defendants in error constituted a

third lien. Judgment was rendered accordingly. On appeal the judgment in favor of Simmons College was affirmed, and the judgment as between plaintiffs in error and defendants in error was reversed, and judgment rendered establishing the priority of the liens of defendants in error herein over the liens of the plaintiffs in error; the court holding that defendants in error, holders of the notes executed by W. F. Braddy, were innocent purchasers in good faith for value, without notice of the Gregg notes held by plaintiffs in error. 179 S. W. 1141.

All parties agree that Simmons College is entitled to priority of lien, and that the judgment in its favor is correct. The only contest is between plaintiffs in error as owners of notes 2, 3, and 4 of the Gregg or first series, and defendants in error as owners of the W. F. Braddy or second series of notes.

[1] We are of opinion that, under the facts herein, defendants in error are not entitled to protection as innocent purchasers for value without notice of the notes of the Gregg series owned and held by plaintiffs in error.

The deed from May Braddy to Eliza Gregg expressly reserved a lien to secure the series of ten notes executed by Mrs. Gregg. Defendants in error were, of course, charged by the record with notice of the lien so created. Whether the recitals in the deed of reconveyance from Eliza Gregg to May Braddy, in the transfer to Simmons College, or in the deed to W. F. Braddy, charged defendants in error with notice of the lien, is in our view not a material inquiry. They were charged with notice of the prior lien through the reservation thereof in the deed from May Braddy to Eliza Gregg. The recitals in the subsequent instruments are material only in determining their effect upon the notice with which defendants in error were already charged from the record of the original deed. The recitals are to be construed with a view to determining whether they are declarations of payment, satisfaction, or cancellation of the notes, and releases of the lien securing same.

[2] The purchase of a vendor's lien note carries with it the lien. Such transfers are within our registration statutes. A transferee of such note has it within his power to take a written assignment thereof and place same of record, thus securing himself against a wrongful release by the original owner. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54. Under the authority of the above-cited case, had the record owner of the notes released the same of record, the transfers to plaintiffs in error not being of record, defendants in error purchasing the second series of notes for a valuable consideration, and without actual notice, would be protected as innocent purchasers. Under such a state of facts, the defendants in error, though charged with notice that a lien had theretofore existed, would be warranted from the record in believing that such lien was extinguished, and plaintiffs in error, having neglected the performance of a duty enjoined or the exercise of a privilege granted for their security, would be held to suffer the loss as against those dealing with the land in its condition as revealed by the records.

An affirmative declaration or act equivalent to such declaration by the record owner of the notes of the first series, in fact transferred to plaintiffs in error, that same had been paid, satisfied, or canceled, or the lien released or extinguished, would protect defendants in error as innocent purchasers for value without notice of the transfer to plaintiffs in error; but, in the absence of such affirmative declaration or equivalent act by the record owner, the fact that the transfers to plaintiffs in error were not of record, and that defendants in error were ignorant that plaintiffs in error were the owners and holders of such notes, would be without effect upon the rights of the respective parties. Defendants in error were charged with notice of the existence of the lien through the record of the original deed, and there would be nothing to disclose or suggest a release thereof.

[3] The recitals in the deed of reconveyance from Mrs. Gregg to May Braddy cannot be construed as declarations of payment, satisfaction, or cancellation of the notes and release or extinguishment of the lien. On the contrary, the assumption of all debts and obligations that may be held against the land and the recital that the reconveyance was made "because of grantor's inability to pay the outstanding notes against the land," plainly indicate that the notes, or some of them, were then outstanding in other parties.

Effect must be given the language used by parties to an instrument. The consideration for the reconveyance was not a cancellation of the notes, but an assumption of their payment. This presupposes a creditor, and it could hardly be presumed that she agreed to pay herself. The recitals gave notice of indebtedness which Mrs. Braddy agreed to pay. The records disclosed no indebtedness or obligation against the land other than the Gregg notes. Nothing of record at the date of the reconveyance indicated their payment or the release of the lien securing them. It follows that the assumption clause must of necessity be referred to these notes.

[4] Defendants in error insist that through the reconveyance to Mrs. Braddy a merger was effected and thereby the lien extinguished. No merger in fact existed, because at that time the three notes of the Gregg series had been transferred to and were owned by plaintiffs in error; nor do the recitals import such merger and consequent extinguishment of the lien.

The transfer to Simmons College specifical-

ly declares payment, satisfaction, and full release and cancellation of the last five notes of the Gregg series, but recognizes as unpaid notes numbered 2, 3, and 4, transferred to plaintiffs in error, declaring them a second and inferior lien to the two notes assigned to Simmons College. It is urged that, if these notes were outstanding in third parties, Mrs. Braddy would be without authority to impair their security by postponing the lien to that securing the notes transferred to Simmons College. This is true, but such postponement of lien may have been with the consent of the owners and holders of such notes. The lien is recognized and is not released, but simply "made a second and inferior lien" to that securing the two notes assigned Simmons College. The lien is not sought to be affected except in its relation to the Simmons College notes. Giving full effect to the recitals, the notes held by plaintiffs in error would have priority over those subsequently executed by W. F. Braddy and acquired by defendants in error. If the notes were then owned by Mrs. Braddy, the titles were united in her, resulting in a merger, and no lien of any kind would exist to secure such notes.

[5] If it be conceded that, from the declaration of the creation of a second lien to secure these notes, an inference could arise that same were then owned by Mrs. Braddy, we believe that such inference would be sufficiently dubious to incite inquiry on the part of the purchasers of the second series of notes. At any rate, such an inference is not sufficiently strong or cogent to be tantamount to a declaration of payment of the notes and release or extinguishment of the lien. This is especially true in view of the assumption of the indebtedness by May Braddy in a deed of reconveyance and by the recital in the deed to W. F. Braddy in which he "assumed the payment of all outstanding indebtedness." There is nothing to warrant the inference that the indebtedness assumed by the grantee, W. F. Braddy, was limited to that evidenced by the two notes theretofore transferred to Simmons College. If the intention was to limit the assumption to the Simmons College notes, we would expect an expression of such limitation by specific mention of these notes. The language is too broad and comprehensive to be thus limited.

The records disclose the execution of the first series of notes and the reservation of a lien securing same. None of the instruments executed by the payee and holder of the notes can be construed as a declaration of their payment, satisfaction, or cancellation, and the consequent release or extinguishment of the lien created to secure them. It follows that defendants in error cannot assert innocent purchase for value of the second series of notes without notice of the notes of the first series held by plaintiffs in error.

The evidence establishes, and the Court of Civil Appeals finds, that M. T. Braddy, the husband of May Braddy, represented to each of the defendants in error at the time of the transfer to them of the second series of notes that such notes "were the only liens against said land, except $1,300 due the Simmons College."

There is no evidence in the record that M. T. Braddy was the agent of his wife, May Braddy, in the transaction. M. T. Braddy was the payee of the second series of notes, and interested in their sale and disposition, and defendants in error could not safely rely on the interested statement of Braddy to destroy the effect of the notice with which they were charged. In so far as the records disclose, May Braddy was accessible and no inquiry was made of her. It is therefore unnecessary to determine what would have been the effect of such inquiry and her confirmation of the statement made by her husband. Waggoner v. Dodson, 96 Tex. 415, 73 S. W. 517.

We are of opinion that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.